STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Mitchell A. LANGE, Defendant-Appellant.

Supreme Court

*No. 2008AP882–CR. Oral argument April 22, 2009.
—Decided June 16, 2009.*

2009 WI 49

(Also reported in 766 N.W.2d 551.)

For the plaintiff-respondent-petitioner there were briefs and oral argument by *Timothy David Kiefer*, assistant district attorney.

For the defendant-appellant there was a brief by *Steven M. Cohen*, Madison, and oral argument by *Steven M. Cohen*.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. The State

seeks review of an unpublished decision of the court of appeals reversing an order and a judgment of the Circuit Court for Dane County, Diane M. Nicks, Judge.[1] The circuit court denied defendant Mitchell A. Lange's motion to suppress the results of a blood test analyzing a sample of his blood. The defendant entered a no-contest plea and was found guilty of operating a motor vehicle while under the influence of an intoxicant as a second offense contrary to Wis. Stat. § 346.63(1)(a) (2005–06).[2]

¶ 2.   We are asked to determine whether a law enforcement officer complied with the Fourth Amendment to the United States Constitution when obtaining a blood sample from the defendant without a warrant to do so. Our prior cases establish that a warrantless blood sample taken at the direction of a law enforcement officer is consistent with the Fourth Amendment under the following circumstances: "(1) the blood draw is taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime, (2) there is a clear indication that the blood draw will produce evidence of intoxication, (3) the method used to

---

[1] *State v. Lange,* 2008AP882–CR, unpublished slip op. (Wis. Ct. App. Oct. 2, 2008).

[2] Wisconsin Stat. 346.63 (2005–06) provides in relevant part as follows:

(1) No person may drive or operate a motor vehicle while:

(a) Under the influence of an intoxicant, a controlled substance, a controlled substance analog or any combination of an intoxicant, a controlled substance and a controlled substance analog, under the influence of any other drug to a degree which renders him or her incapable of safely driving, or under the combined influence of an intoxicant and any other drug to a degree which renders him or her incapable of safely driving . . . .

All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

take the blood sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw."[3]

¶ 3.  The defendant challenges the blood draw on a single ground, namely that he was not lawfully arrested for operating a motor vehicle while under the influence of an intoxicant when his blood was taken. More specifically, the defendant argues that his arrest for operating a motor vehicle while under the influence of an intoxicant was not lawful because the arresting officer lacked probable cause to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant. The defendant does not challenge the constitutionality of the blood draw except on the ground of the constitutionality of the arrest.

¶ 4.  Accordingly, we state the issue on review as follows: Did the law enforcement officer, at the time of the defendant's arrest, have probable cause under the circumstances of the instant case to believe that the defendant was guilty of operating a motor vehicle while under the influence of an intoxicant?

¶ 5.  We conclude that the circuit court did not err in concluding that the state met its burden of establishing that at the time of the arrest the law enforcement officer had probable cause to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant. Accordingly, we reverse the decision of the court of appeals reversing the order of the circuit court.

---

[3] *State v. Krajewski,* 2002 WI 97, ¶ 33, 255 Wis. 2d 98, 648 N.W.2d 385 (quoting *State v. Bohling,* 173 Wis. 2d 529, 533–34, 494 N.W.2d 399 (1993)). *See also State v. Faust,* 2004 WI 99, ¶ 18, 274 Wis. 2d 183, 682 N.W.2d 371 (same).

¶ 6. We briefly summarize the facts relating to the defendant's arrest and the blood draw. We will furnish additional facts later in the opinion when discussing the legal issue presented.

¶ 7. The facts are not disputed. Some facts are taken from a written report filed by the arresting officer, Officer Margaret Hoffman of the Maple Bluff Police Department. The defendant filed a portion of Officer Hoffman's report with the circuit court in conjunction with his motion to suppress. The remaining facts may be found in the testimony of Officer Hoffman and a second Maple Bluff police officer, Officer Don Penly, at the suppression hearing.

¶ 8. Officer Penly and Officer Hoffman were the only persons who testified at the suppression hearing. The defendant did not controvert their testimony or the contents of Officer Hoffman's written report.

¶ 9. Officer Hoffman, and to a lesser extent Officer Penly, observed the defendant driving unlawfully and then crashing his vehicle at about 3:00 A.M. on Sunday, January 21, 2007. The circumstances relating to the defendant's unlawful driving and his crash are described below.

¶ 10. The crash left the defendant with substantial personal injuries and damage to his vehicle. The defendant's vehicle was on its roof when Officer Hoffman discovered it, its front end caved in. A utility pole was cut in two and hanging by its wires. Officer Hoffman heard loud music and a car alarm. The area reeked of gasoline, which poured through the defendant's car. Officer Hoffman immediately contacted dispatch, requesting the help of fire and emergency response services.

¶ 11. The defendant was no longer in his vehicle. Officer Hoffman found the defendant lying face-down on the sidewalk. Blood was running out of his mouth and nose. He was unconscious but was breathing and had a pulse. Officer Hoffman updated dispatch about the extent of the defendant's injuries.

¶ 12. Officer Hoffman did not search for evidence that the defendant was intoxicated. She testified that she did not try to smell the defendant for the odor of intoxicants, because gasoline was all over the accident scene; did not search the defendant's vehicle, because she perceived a risk that it would ignite; and did not perform a field sobriety test on the defendant, because the defendant was injured and unconscious. Officer Hoffman testified that her top priorities were to keep the defendant alive and to keep both the defendant and herself safe, rather than to investigate for evidence of a crime.

¶ 13. Officer Penly joined Officer Hoffman at the accident scene shortly after Officer Hoffman arrived. Officer Penly was off duty at the time but informed Officer Hoffman that he would go back on duty so that he could assist her. At the suppression hearing, Officer Penly supplied testimony describing the accident scene essentially as Officer Hoffman described it.

¶ 14. Officers from the Madison Police Department soon arrived and took control of the crash scene. The defendant was transported to the emergency room at the University of Wisconsin Hospital. Officer Hoffman and Officer Penly made a brief visit to the Maple Bluff Police Department and then drove to the emergency room to find the defendant.

¶ 15. At the emergency room of the hospital, multiple doctors and nurses were working on the defendant. Officer Penly and Officer Hoffman advised a

389

nurse that they would need a legal blood draw. The nurse told them that they would have to wait until the defendant had been given a CT scan.

¶ 16. Officer Hoffman was able to see the defendant's driver's license at a nurse station. She learned from a Dane County agency that the defendant's driver's license was valid but that the defendant had a prior conviction for operating a motor vehicle while under the influence of an intoxicant.

¶ 17. When the defendant returned from his CT scan, a nurse informed Officer Hoffman that she needed to act fast if she wanted to get blood drawn. Medical personnel were frantically working on the defendant, who was still unconscious. Officer Hoffman formally placed the defendant under arrest for operating a vehicle while under the influence of an intoxicant.[4] She then asked a nurse to draw blood from the unconscious defendant.[5]

---

[4] Officer Hoffman's written report, which the defendant submitted to the circuit court in conjunction with his motion to suppress, clearly states that Officer Hoffman arrested the defendant in the hospital.

The defendant states in his brief to this court that Officer Hoffman arrested him at the accident scene. *See* Brief of Defendant-Appellant at 3. The defendant cites Officer Hoffman's testimony at the suppression hearing. Officer Hoffman's testimony, however, does not contradict her written report. At the suppression hearing, Officer Hoffman responded in the affirmative when the prosecutor asked her whether she arrested the defendant "at some point in this process." The prosecutor did not explain to Officer Hoffman what "process" he was referring to. Officer Hoffman did not state during the suppression hearing when or where she placed the defendant under arrest.

[5] The implied consent law applies to taking blood from an unconscious person. Neither party refers to the implied consent

¶ 18.   Officer Hoffman had the defendant's blood tested for the presence of intoxicants.

## II

¶ 19.   A warrantless arrest is not lawful except when supported by probable cause.[6] Probable cause to arrest for operating while under the influence of an

law, which states that an unconscious person who has driven or operated a motor vehicle on the public highways is not presumed to have withdrawn consent to a blood test. Blood samples may be taken from the unconscious person if the law enforcement officer (1) has probable cause to believe that the person has violated s. 346.63, for example, or (2) detects any presence of alcohol, controlled substance, controlled substance analog or other drug, or a combination thereof.

Wisconsin Stat. § 343.305(2) provides:

Any person who . . . drives or operates a motor vehicle upon the public highways of this state . . . is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol, controlled substances, controlled substance analogs or other drugs, or any combination of alcohol, controlled substances, controlled substance analogs and other drugs, . . . when required to do so under [Wis. Stat. § 343.305(3)(ar) or (3)(b)].

Wisconsin Stat. § 343.305(3)(b) further provides:

A person who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent under this subsection, and if a law enforcement officer has probable cause to believe that the person has violated s. 346.63 (1) . . . or detects any presence of alcohol, controlled substance, controlled substance analog or other drug, or a combination thereof, on a person driving or operating or on duty time with respect to a commercial motor vehicle . . . one or more samples [of blood, breath, or urine] may be administered to the person.

[6] *State v. Secrist*, 224 Wis. 2d 201, 209, 212, 589 N.W.2d 387 (1999) ("Under both the Fourth Amendment and Article I, § 11

intoxicant refers to that quantum of evidence within the arresting officer's knowledge at the time of the arrest that would lead a reasonable law enforcement officer to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant.[7] The burden is on the state to show that the officer had probable cause to arrest.[8]

¶ 20. The question of probable cause must be assessed on a case-by-case basis, looking at the totality of the circumstances.[9] Probable cause is a "flexible, common-sense measure of the plausibility of particular conclusions about human behavior."[10] When the facts are not disputed, whether probable cause to arrest exists in a given case is a question of law that this court determines independently of the circuit court and court of appeals but benefiting from their analyses.[11] In

of the Wisconsin Constitution, probable cause must exist to justify an arrest. . . . Probable cause is the sine qua non of a lawful arrest.") (quotation marks and citation omitted).

[7] *State v. Kasian,* 207 Wis. 2d 611, 621, 558 N.W.2d 687 (Ct. App. 1996).

[8] *State v. Wille,* 185 Wis. 2d 673, 682, 518 N.W.2d 325 (Ct. App. 1994).

[9] *Washburn County v. Smith,* 2008 WI 23, ¶ 34, 308 Wis. 2d 65, 746 N.W.2d 243; *State v. Multaler,* 2002 WI 35, ¶ 34, 252 Wis. 2d 54, 643 N.W.2d 437.

*See also Secrist,* 224 Wis. 2d at 201 ("Whether probable cause exists in a particular case must be judged by the facts of that case.") (citation omitted).

[10] *State v. Higginbotham,* 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991).

[11] *See Washburn County,* 308 Wis. 2d 65, ¶ 16.

*See also State v. Woods,* 117 Wis. 2d 701, 710, 345 N.W.2d 457 (1984) ("If the historical facts are undisputed, probable

determining whether there is probable cause, the court applies an objective standard, considering the information available to the officer and the officer's training and experience.[12]

¶ 21. In arguing that Officer Hoffman did not have probable cause to arrest him for operating a motor vehicle while under the influence of an intoxicant, the defendant asserts that many common indicators of intoxication did not exist in the present case: The defendant did not admit alcohol consumption. There were no odors of intoxicants, no slurred speech or difficulty balancing, no known visits to a bar, no inconsistent stories or explanations, no intoxicated traveling companions, no empty cans or bottles, and no suggestive field sobriety tests.[13]

---

cause for an arrest is a question of law that is subject to independent review on appeal, without deference to the trial court's conclusion.").

[12] *State v. Kutz*, 2003 WI App 205, ¶ 12, 267 Wis. 2d 531, 671 N.W.2d 600.

[13] In his brief to this court, the defendant cites five Wisconsin cases involving at least one indicator of intoxication not present in the instant case. The defendant cites *Washburn County v. Smith*, 2008 WI 23, ¶ 36, 308 Wis. 2d 65, 746 N.W.2d 243 (probable cause existed when, at the time of the arrest, the officer knew that Smith had been driving well in excess of the speed limit late at night on a two-lane highway, that Smith had delayed pulling over after the officer activated his emergency lights, that Smith had twice driven across the centerline before pulling over, that Smith had an odor of alcohol on his breath, that Smith had admitted to consuming alcohol over a period of more than ten hours ending just prior to his encounter with the officer, and that Smith had supplied inconsistent and equivocal information regarding the amount of alcohol that he had consumed during that period of time); *State v. Kasian,* 207 Wis. 2d 611, 622, 558 N.W.2d 687 (Ct. App. 1996) (probable

¶ 22.  The defendant contends that the time of the incident (3:00 A.M.) and the officers' observations of his driving, which the defendant characterizes as "erratic," represented the only potential evidence of intoxication.

■

¶ 23.  We agree with the defendant that Officer Hoffman did not observe the common indicators of intoxication that law enforcement officers often detect when investigating whether a driver is intoxicated. Nevertheless, we conclude that the totality of circumstances within Officer Hoffman's knowledge at the time of the arrest would lead a reasonable police officer to believe, as Officer Hoffman and Officer Penly each believed in the present case, that the defendant was

cause existed when the officer knew that Kasian had been in a one-vehicle accident, that Kasian smelled of intoxicants, and that Kasian's speech was slurred); *State v. Wille*, 185 Wis. 2d 673, 683–84, 518 N.W.2d 325 (Ct. App. 1994) (probable cause existed when the officer knew that Wille smelled of intoxicants, that Wille had driven his car into the rear end of a parked Oldsmobile, and that Wille had stated that he had "to quit doing this"); *State v. Swanson*, 164 Wis. 2d 437, 453–54 n.6, 475 N.W.2d 148 (1991) (stating, in a footnote, that officers "arguably" lacked probable cause to arrest Swanson for operating while under the influence when the officers knew that Swanson had been driving erratically at about bar time, that Swanson had failed to explain his erratic driving, and that Swanson had the odor of intoxicants on his breath); and *State v. Seibel*, 163 Wis. 2d 164, 181–83, 471 N.W.2d 226 (1991) (reasonable suspicion existed to believe that Seibel's blood contained evidence of intoxication when the officers knew that Seibel had crossed the center line for no justifiable reason, causing a serious accident; that Seibel's traveling companions, who had been driving their own motor vehicles in tandem with Seibel, smelled of intoxicants; that Seibel himself appeared to smell of intoxicants; and that Seibel exhibited a belligerence and lack of contact with reality often associated with excessive drinking).

under the influence of an intoxicant while operating his vehicle. We reach this conclusion based on the totality of circumstances, including the following five factors in the present case.

¶ 24.  First, the driving that Officer Hoffman and Officer Penly witnessed is relevant. The driving was not merely erratic and unlawful; it was the sort of wildly dangerous driving that suggests the absence of a sober decision maker behind the wheel. The defendant crossed the centerline multiple times, venturing far into the wrong side of a four-lane road. The defendant also did not merely speed; he increased his speed to over 80 miles per hour in a 30–miles-per-hour zone when he was pursued by Officer Hoffman with her lights flashing. Finally, the defendant did not simply fail to maintain proper control of his vehicle; he drove his vehicle off the road and through a utility pole.

¶ 25.  The facts relating to the defendant's driving are as follows. Officer Hoffman observed the defendant's white Pontiac sedan traveling two lanes deep into the wrong side of the road. She estimated that the defendant's vehicle was moving about 15 miles per hour above the 30–mile-per-hour speed limit. The defendant's vehicle continued on the wrong side of the road for about 50 to 75 feet before moving over to the correct side.

¶ 26.  Officer Hoffman pulled into the road and began to pursue the defendant's vehicle. She activated her emergency lights and increased her speed, noting at one point that she was traveling 84 miles per hour. Even at that speed, Officer Hoffman was unable to close the gap between her vehicle and the defendant's.

¶ 27.  Officer Hoffman soon observed the defendant's vehicle swerve back to the wrong side of the road and then make a quick turn, hard to the right. The

395

vehicle disappeared from Officer Hoffman's view. A cloud of gray smoke appeared. Officer Hoffman pulled up to the scene to discover that the defendant had crashed into a utility pole, cutting the pole in two.

¶ 28.  Officer Penly also witnessed some of the defendant's driving. He testified at the suppression hearing that he passed the defendant's vehicle moments before Officer Hoffman's encounter with the defendant began. He stated that as his vehicle approached the defendant's, he saw that the defendant was driving about 10 to 15 miles per hour over the speed limit and was traveling about 24 feet into the wrong side of the road.

¶ 29.  There was no other traffic; the roadway was dry and free of debris. Thus traffic and road conditions do not explain the defendant's driving.

¶ 30.  Second, the officers' experience is a consideration. Officer Hoffman had been a Maple Bluff police officer for only a few months when she handled the defendant's case. She estimated that she had worked on about 10 to 15 operating-while-under-the-influence cases before her encounter with the defendant. Officer Penly was a veteran officer. He had been with the Maple Bluff Police Department for nearly eight years at the time of the defendant's arrest and had worked over 100 cases involving the crime of operating while under the influence.

¶ 31.  Officer Penly and Officer Hoffman discussed their observations, as well as the question whether they had probable cause to arrest the defendant for operating while under the influence at the hospital. Officer Penly informed Officer Hoffman that in his opinion, probable cause existed to arrest the defendant for operating while under the influence.

¶ 32. Third, the time of night is relevant. Officer Hoffman's and Officer Penly's uncontroverted testimony was that they encountered the defendant about when Saturday night bar-time traffic arrives in Maple Bluff from downtown Madison. It is a matter of common knowledge that people tend to drink during the weekend when they do not have to go to work the following morning.

¶ 33. Fourth, by the time of the arrest, Officer Hoffman had discovered that the defendant had a prior conviction for operating a motor vehicle while under the influence of an intoxicant. Officer Hoffman could take this evidence into account when determining whether she had probable cause to believe that the defendant was under the influence of an intoxicant while operating his vehicle.[14]

¶ 34. Fifth, the defendant's collision with the utility pole cut off the law enforcement officers' opportunity for further investigation. The defendant was unconscious, bloody, and lying amid a gasoline-soaked crash scene when Officer Hoffman discovered him. It is neither surprising nor significant that Officer Hoffman failed to detect any odors of intoxicants, to ascertain whether the defendant's speech was slurred or his balance impaired, to obtain an admission that the defendant had been drinking, to administer a field sobriety test to the defendant, or to discover any empty cans or bottles in the defendant's compacted and evidently flammable vehicle.

¶ 35. The defendant argues that Officer Hoffman and Officer Penly "could have followed [the defendant] to the hospital," where the defendant "may have re

---

[14] *See* 2 Wayne R. LaFave, *Search and Seizure* § 3.2(d), at 58–59 & nn.134–35 (4th ed. 2004) (collecting cases holding that "a suspect's prior convictions and prior arrests are not barred from consideration on the issue of probable cause").

gained consciousness," enabling the officers to "obtain statements or make additional observations," and where the officers might have "had the opportunity to smell [the defendant's] clothing and breath for alcohol away from the gasoline smell at the scene."[15] These arguments are not persuasive in the present case.

¶ 36. The record shows that the officers did in fact follow the defendant to the hospital. At the hospital, the officers discovered that the defendant was still unconscious and was subject to the attention of medical personnel, one of whom informed Officer Hoffman that she needed to act fast if she wanted a blood draw. The officers' failure to obtain additional evidence of intoxication at the hospital before the arrest does not, under the circumstances of the present case, weigh against the inference that the defendant was under the influence of an intoxicant.

¶ 37. Although evidence of intoxicant usage— such as odors, an admission, or containers—ordinarily exists in drunk driving cases and strengthens the existence of probable cause, such evidence is not required. The totality of the circumstances is the test. The reasonable inference to be drawn from the facts in the present case is the one the officers drew: The defendant was impaired by an intoxicant.

¶ 38. The evidence within Officer Hoffman's knowledge at the time of the arrest did not conclusively prove that the defendant was intoxicated. But although probable cause must amount to "more than a possibility or suspicion that the defendant committed an offense," the evidence required to establish probable cause "need not reach the level of proof beyond a reasonable doubt

---

[15] Brief of Defendant-Appellant at 8.

or even that guilt is more likely than not."[16] It is sufficient that the evidence known to Officer Hoffman would lead a reasonable police officer to believe that the defendant probably was under the influence of an intoxicant while operating his vehicle.

¶ 39. The defendant warns that if his conviction is allowed to stand, law enforcement officers will be permitted to arrest, for the crime of operating while under the influence, "all drivers involved in an accident during very late or very early hours."[17] Not true! Probable cause in the present case rests on the officer's personal observation of the defendant's extremely wild and dangerous driving prior to his crash; on the lack of evidence of intoxication because the defendant was injured and unconscious and the accident scene was covered in gasoline; on the defendant's prior conviction for operating a vehicle while under the influence; on the officers' experience; and on the crash. The question of probable cause, as we have explained, must be assessed on a case-by-case basis looking at the totality of the circumstances.

¶ 40. For the reasons set forth, we conclude that the defendant's arrest was supported by probable cause. The evidence within the arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe that the defendant had committed the crime of operating a motor vehicle while under the influence of an intoxicant.

¶ 41. Accordingly, we reverse the decision of the court of appeals reversing the circuit court.

*By the Court.*—The decision of the court of appeals is reversed.

---

[16] *Secrist,* 224 Wis. 2d at 212 (citation omitted).

[17] Brief of Defendant-Appellant at 10.

¶ 42. ANNETTE KINGSLAND ZIEGLER, J. (*concurring*). I join the majority opinion, but I write in concurrence because I am concerned that the majority opinion's reference to *State v. Swanson,* 164 Wis. 2d 437, 453–54 n.6, 475 N.W.2d 148 (1991) in footnote 13 will give credence to *Swanson's* erroneous statement that probable cause to arrest for operating while under the influence of an intoxicant cannot be shown unless a field sobriety test was conducted and the driver failed the test.

¶ 43.   By writing separately I intend to clarify that the totality of the circumstances test remains intact for determining whether there is probable cause to arrest, despite the majority's citation to *Swanson.* Last term, in *Washburn County v. Smith,*, 2008 WI 23, 308 Wis. 2d 65, 746 N.W.2d 243, this court stated that "*Swanson* did not announce a general rule requiring field sobriety tests in all cases as a prerequisite for establishing probable cause to arrest a driver for operating a motor vehicle while under the influence of an intoxicant," and this court further stated that "the *Swanson* court's statement pertained to the circumstances of that case" and "probable cause must be assessed on a case-by-case basis." *Smith,* 308 Wis. 2d 65, ¶¶ 33–34. This court has time and time again stated that probable cause is based upon the totality of the circumstances, and we do so again in the case at hand. *See* majority op., ¶ 20. As a result, it remains clear that field sobriety tests need not be given in order for there to be a finding of probable cause.

¶ 44.   For the foregoing reason I respectfully concur.

¶ 45.   I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and MICHAEL J. GABLEMAN join this concurrence.