**COURT OF APPEALS**

**DECISION**

**DATED AND FILED**

**September 25, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP167-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CT296**

**IN COURT OF APPEALS**
**DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

 V.

SCOTT J. FARUZZI,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Walworth County: KRISTINE E. DRETTWAN, Judge. *Affirmed.*

¶1     NEUBAUER, C.J.[1]  The State appeals from the circuit court's order suppressing evidence obtained pursuant to the arrest of Scott J. Faruzzi, who had

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version.

been charged with operating a motor vehicle while under the influence of an intoxicant (OWI). Although evidence supported the officer's initial stop and further investigation involving field sobriety tests, we see no error in the circuit court's conclusion that the totality of the evidence, including the police video, did not establish probable cause to arrest for OWI. We affirm.

## BACKGROUND

¶2    On May 19, 2018, at approximately 8:30 p.m., Officer Gregory Ryan was dispatched to conduct a welfare check on a vehicle heading westbound into the Village of Fontana on South Lakeshore Drive. A report had been made that there were some "possible family troubles" and that the officer should check "on the condition of the people in the truck." The witness further described the truck as a black pickup. Ryan testified that the witness also indicated the driver "might have been intoxicated."

¶3    Ryan located a matching vehicle heading in the reported direction and stopped the vehicle to conduct a welfare check. The vehicle showed no problems in safely and promptly responding to the officer's request to pull over. Ryan approached the driver, who was identified by an Illinois driver's license as Faruzzi. There was also a female passenger, and Faruzzi indicated to Ryan that everything was ok.[2]

¶4    Faruzzi's truck was jacked up, preventing Ryan from seeing inside or smelling any odors. Ryan did observe that Faruzzi had glassy, bloodshot eyes.

---

[2] Most, if not all, of the interactions between Faruzzi and the police were captured on police video footage. None of the video was made part of the appellate record. However, the circuit court reviewed the footage and, as discussed later, provided findings.

Ryan had estimated that Faruzzi was exceeding the speed limit by fifteen miles per hour at the time but did not write any related citation.

¶5 As Ryan returned to his squad to write a citation for lack of insurance, Officer Ross Vogt had arrived due to a report of a "family offense" and the need to conduct a welfare check. Because dogs were barking in the back of the truck, Vogt asked the passenger to step out and, as she did, a beer bottle rolled out and broke on the pavement. Although Vogt advised Ryan of the bottle, Vogt did not save it, determine what, if anything, was in it, and no citation was issued for it.

¶6 Because of Faruzzi's red eyes and the bottle, Ryan decided to ask Faruzzi to perform field sobriety tests. As Faruzzi exited the truck, Ryan could now detect a "light" odor of intoxicants. Both Vogt and Sergeant Derrick Goetsch, who had now arrived, detected an odor of intoxicants and saw Faruzzi's bloodshot, glassy eyes.

¶7 During the horizontal gaze nystagmus (HGN) test, Ryan initially believed that he observed four of six clues, which is the threshold for impairment. Ryan admitted, however, that while looking for nystagmus at maximum deviation, he had Faruzzi hold his eyes for only three rather than the required four seconds. Because he improperly administered the test under The National Highway Traffic Safety Administration (NHTSA) manual, Ryan agreed that there were less than four clues and that the "[c]ourt can't rely on that."

¶8 Ryan asked Faruzzi to perform the walk-and-turn test. During the test, Ryan observed that, as Faruzzi walked nine steps in a straight line heel-to-toe, Faruzzi made a gap of "[m]aybe an inch or two" after steps three and nine. After Faruzzi turned and walked back another nine steps, Ryan noted another gap after

3

step five. When asked whether the safety manual permits a one-inch gap, Ryan acknowledged that it does and that he could not say whether Faruzzi's gaps were one or two inches as he "didn't have a ruler with [him]."

¶9    In between the two sets of nine steps, Faruzzi was instructed to take small choppy steps to make the turn. Faruzzi instead, however, performed a military-style pivot. While doing so, he did not stumble or otherwise lose his balance. Throughout the stop, Faruzzi did not slur his speech or exhibit any problems with walking or balance.[3]

¶10    For medical reasons, Faruzzi could not perform the one-leg-stand test, so Goetsch conducted the finger dexterity test instead. This is not a standardized test. An argument ensued about this test. Before waiting for the full instructions, Faruzzi did the test two times and simply stopped before Goetsch completed the instructions. Goetsch instructed Faruzzi to do the test until he was told to stop, but Faruzzi declined. Although Goetsch wanted Faruzzi to do the tests again, he could not say that Faruzzi performed them incorrectly.

¶11    After completing the finger dexterity test, Ryan asked Faruzzi to submit to a preliminary breath test (PBT), which Faruzzi refused. Ryan then arrested Faruzzi for OWI.

¶12    Faruzzi moved to suppress all of the evidence obtained as a result of his illegal arrest as there was no probable cause. After two evidentiary hearings,

---

[3] Before beginning the walk-and-turn test, Ryan noted that Faruzzi had stepped out of place during instructions. Otherwise, there is no indication or suggestion that Faruzzi stumbled or revealed a lack of balance.

and listening to arguments from counsel, the court granted the motion to suppress. The court explained as follows:

> And when I look at the facts here, what do we have? A bottle fell out of the passenger side. There's no indication there was any alcohol in it but apparently it was a beer bottle. Okay. That gives you the right to look at it. What else do we have? There's no bad driving here, other than the speeding, 40 in a 25. And most people at one time or another have sped and it's not necessarily an indication of bad, meaning poor, meaning dangerous driving. You shouldn't be doing 40 in a 25 in a residential area … but it's not like he put that truck in the ditch, like he was swerving making unsafe turns, anything like that. I have no indication of that.
>
> Officer Ryan's testimony was that the defendant's speech was not slurred. And I know that we have the caller making the assertion that he thought the couple was intoxicated. But other than that assertion there are no facts by which the Court can consider that opinion. He—Ryan testified the defendant had glassy and bloodshot eyes and that once he got out of the truck he smelled a light odor of intoxicants. And I think that's important to note, he said it was a light odor. He stated the defendant did not have a problem getting out of that jacked-up truck, did not have a problem walking to the back. I watched the video…. I do note that the defendant was argumentative—not the best attitude to have with officers who were investigating you, let's be honest.
>
> ….
>
> [A]nd then we come to the field sobriety tests. I think Officer Ryan was incredibly honest with this Court. I think he's a young officer. I think he tries very hard and he was honest. When he did the HGN, although at the time he noted four out of six clues, that's what he noted at the time. During the testimony he admitted that he did not administer the HGN correctly and that he knew then he admitted you can't use all of those clues, I agree with that. So there were only two of six clues on that HGN that this Court can consider. And the Court has to—I know he testified to it, and I know from hearing it a thousand times that on the HGN four of six clues is indicative of impairment. So the HGN does not show impairment here.

5

On the walk and turn he exhibited two of eight clues for missing a couple of the heel to toes, but even so, the officer can't say by how far and recognizes that under NHTSA an inch is acceptable, and then for not doing the turn correctly. I watched it on the video. And the officer admits he never lost his balance. He did not use his arms to retain balance or anything. And I didn't see any balance problems on the video. I was not assessing it for clues, I was just watching. And then—so he got two clues out of eight. And although that is indicative of impairment, I have to look at everything under the totality of the circumstances here including the way that he did perform the rest of the test. He didn't do the one leg because of the medical issue. The officer rightly so did not force him to do that. And then Sergeant Goetsch had him do the finger dexterity test which is not a standardized test. And, quite frankly, the defendant and Sergeant Goetsch started arguing about that which, quite frankly, I can't blame the sergeant for giving it back to you, because you were giving it to him.

….

But I watched you do the finger dexterity and I didn't see a problem with it the way you did it. It's not a field test really anyway but it didn't cause me any concern….

But I don't believe under our Constitution and under case law as defined in Wisconsin under the totality of the circumstances that they had probable cause to arrest you for OWI. I don't—if they had—if there was a possibility, yes, absolutely, but it didn't rise to the level of probable cause.

The State appeals.

## DISCUSSION

*Standard of Review and the Law of Probable Cause to Arrest*

¶13 It is a mixed question as to whether a motion to suppress evidence should be granted or not. *State v. Dumstrey*, 2015 WI App 5, ¶7, 359 Wis. 2d 624, 859 N.W.2d 138 (2014). Unless clearly erroneous, we uphold the circuit court's findings of fact, and we review de novo the application of those facts to constitutional principles. *Id.*

6

¶14 In determining whether probable cause exists, we look to the totality of the circumstances as to whether the "arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe ... that the defendant was operating a motor vehicle while under the influence of an intoxicant." *State v. Kasian*, 207 Wis. 2d 611, 621, 558 N.W.2d 687 (Ct. App. 1996) (alteration in original; citation omitted). The State bears the burden to make this case-by-case showing, and the determination can consider the collective knowledge of the department, the existence or absence of field sobriety tests, and the training and experience of the officer. *State v. Lange*, 2009 WI 49, ¶20, 317 Wis. 2d 383, 766 N.W.2d 551; *Kasian*, 207 Wis. 2d at 622; *State v. Wille*, 185 Wis. 2d 673, 683, 518 N.W.2d 325 (Ct. App. 1994).

¶15 We do not evaluate probable cause from a technical or legal sense, but instead rely on real-world and practical considerations acted upon by reasonable people during everyday life. *See State v. Truax*, 151 Wis. 2d 354, 359-60, 444 N.W.2d 432 (Ct. App. 1989). The weight of the evidence need not show guilt beyond a reasonable doubt or even that guilt is a likelihood. Rather, if the information leads a reasonable officer to believe that guilt is more than a possibility, then probable cause exists. *Id.* at 360.

¶16 WISCONSIN STAT. § 346.63(1)(a) generally prohibits any person from driving while "[u]nder the influence of an intoxicant." Being under the influence requires a showing "that the person's ability to safely control the vehicle [is] impaired," but this showing need not be made by any "particular acts of unsafe driving." WIS JI—CRIMINAL 2663A (2015).

7

*Although Some Factors Tend to Indicate Possible Intoxication, Taken Together They Do Not Rise to the Level of Probable Cause for OWI*

¶17     In support of its probable cause argument, the State notes several factors that tend to show intoxication.  When they are subject to some scrutiny, however, they do not collectively rise to the level of probable cause for OWI.  An identified witness reported that Faruzzi and another person were fighting and other reports indicated that they might be intoxicated, suggesting that a welfare check should be in order; but, as the circuit court noted, there are no facts upon which this assertion was based.  Although Ryan estimated that Faruzzi exceeded the speed limit by fifteen miles per hour, Faruzzi was not cited, and there were no reports about reckless driving with telltale signs of an impairment of the ability to safely control the vehicle under OWI, e.g., arbitrary lane changes, off-road traveling, sluggish turns, etc.

¶18     After Ryan approached and spoke with Faruzzi, Ryan could see glassy, red eyes, but detected no odor of alcohol.  After Ryan learned of the bottle, he decided to administer field sobriety tests.

¶19     But the field test results were either unclear or invalid.  On the HGN test, although Ryan at first believed he detected four clues, he later admitted that this was not the case and that the test could not be relied upon.[4]  On the walk-and-turn test, Ryan initially believed that Faruzzi failed to keep his heel and toe sufficiently close together on at least three of the eighteen steps, but then

---

[4] Ryan testified that he had previously made two OWI arrests.  *See* **State v. Pozo**, 198 Wis. 2d 705, 712, 544 N.W.2d 228 (Ct. App. 1995) (explaining experience of officer may be considered to determine probable cause); *cf.* **County of Jefferson v. Renz**, 231 Wis. 2d 293, 297, 603 N.W.2d 541 (1999) (officer had received OWI training, leading to over 200 OWI arrests in six years).

acknowledged that he could not be certain whether the gaps were an inch or more, largely rendering even the two of eight clues doubtful. When the finger dexterity test was used, there was an argument between Faruzzi and Goetsch, but that argument did not appear to detract from Faruzzi's ability to correctly complete the test twice in a row.

¶20 Significantly, throughout the interactions between the officers and Faruzzi and his performance of the tests, the State advances no assertion that Faruzzi had any marked problems walking, talking, or maintaining his balance.[5] Further, neither the welfare check nor the purported speeding led to any type of warning or citation.

¶21 The court made the following observations: an empty beer bottle from the passenger side was of little value; Faruzzi may have driven in excess of the limit but not in a dangerous or swerving nature as one might expect of an intoxicated driver; no facts supported the caller's assertion of intoxication; Ryan's honesty that Faruzzi's odor was "light" and that the HGN was not properly administered; and the officers' acknowledgement that there was no slurred speech or problems with walking or maintaining his balance.

¶22 Most noteworthy is the circuit court's independent viewing of the officer's video footage. Because the video is not in the appellate record, we cannot review it and, instead, assume that it supports the circuit court's ruling. *See Schaidler v. Mercy Med. Ctr. of Oshkosh, Inc.*, 209 Wis. 2d 457, 469-70, 563 N.W.2d 554 (Ct. App. 1997) ("It is the appellant's responsibility to insure that the

---

[5] We note above that, just as he was receiving instructions on the walk-and-turn test, he momentarily stepped out of place.

record includes all documents pertinent to the appeal."); *see also* ***T.W.S., Inc. v. Nelson***, 150 Wis. 2d 251, 254-55, 440 N.W.2d 833 (Ct. App. 1989) (when presented with only a partial record on appeal, we are necessarily confined in our review and will assume that "every fact essential to sustain the trial court's decision is supported by the record").

¶23 After reviewing the video, the circuit court observed that there were no problems with balance and walking, and Faruzzi never used his arms or otherwise needed to maintain his balance. The court noted that it saw no problem with Faruzzi's performance of the finger dexterity test. The court also observed the arguments between Faruzzi and the officers, and made no finding that this was indicative of impairment. With no video to review, we must accept each of these observations upon which the circuit court concluded that it did not see more than a possibility that Faruzzi's ability to safely control his vehicle was impaired by the consumption of alcohol.

¶24 The State refers to several Wisconsin cases where the court determined that probable cause existed with arguably even less evidence. We respectfully disagree. As explained, the OWI indicators here are insufficient, particularly compared to the more stark circumstances presented by the cases cited by the State. These cases distinguish themselves. *See, e.g.*, ***Lange***, 317 Wis. 2d 383, ¶9 (crashed vehicle after unlawful driving at 3:00 a.m., leaving vehicle on its hood, front caved in, utility pole cut in two with hanging wires, loud music and car alarm blaring, with the area reeking of gasoline); ***State v. Babbitt***, 188 Wis. 2d 349, 355, 525 N.W.2d 102 (Ct. App. 1994) (uncooperative driver refusing to take field tests despite smelling of alcohol, hanging onto car for balance after driving erratically, thrice cutting center line all at bar-closing time).

10

¶25 Finally, the State notes that Faruzzi refused to take a PBT under WIS. STAT. § 343.303, which can be used as evidence of probable cause to arrest for OWI as it may show some "consciousness of guilt." *See Babbitt*, 188 Wis. 2d at 359-60. This point is unavailing. Before an officer may request a driver to take a PBT, the officer must have "probable cause to believe" that the driver was driving under the influence, which is a measure of evidence greater than the reasonable suspicion to require an investigative stop, but less than what is required to establish probable cause to arrest. *State v. Felton*, 2012 WI App 114, ¶8, 344 Wis. 2d 483, 824 N.W.2d 871. As already discussed, there was not sufficient evidence to establish probable cause to arrest for OWI, and the State fails to explain, in the alternative, why Ryan had "probable cause to believe" that Faruzzi was driving under the influence in light of his largely successful completion of the field tests, the lack of other indicia, and the circuit court's determination under the totality of the circumstances, including viewing the video. The circuit court found the refusal was reasonable because it was not supported by probable cause. As such, the PBT refusal could not establish probable cause to arrest for OWI.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.