COURT OF APPEALS
DECISION
DATED AND FILED

November 24, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1082-CR**

Cir. Ct. No. **2017CT661**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MICHAEL ANTHONY DOTSON,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Brown County: WILLIAM M. ATKINSON, Judge. *Reversed and cause remanded for further proceedings*.

¶1    STARK, P.J.[1]    Michael Dotson appeals a judgment of conviction, entered upon his no-contest plea to second-offense operating a motor vehicle

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

while intoxicated (OWI). He argues the circuit court erred by denying his motion to suppress evidence obtained during a traffic stop—and after his arrest for an outstanding warrant—because the police officer lacked the reasonable suspicion necessary to conduct field sobriety tests (FSTs).

¶2 We agree with Dotson. The objectively reasonable inferences from the totality of the facts and circumstances known to the officer were insufficient to provide him with reasonable suspicion to believe either that Dotson's blood alcohol level exceeded the legal limits or that his ability to operate his vehicle was impaired. Thus, the officer's continued detainment of Dotson to conduct FSTs was unlawful, and the circuit court erred by denying his motion to suppress evidence obtained after his arrest. We therefore reverse the judgment and remand for further proceedings.

## BACKGROUND

¶3 The State charged Dotson with OWI and operating a motor vehicle with a prohibited alcohol concentration (PAC), both as second offenses. Dotson filed a motion to suppress evidence obtained during a traffic stop of his vehicle and his subsequent arrest. He argued Green Bay Police Department officer Robby Hock violated his *Miranda*[2] rights and unlawfully requested Dotson to perform FSTs without reasonable suspicion. The circuit court held an evidentiary hearing on his motion, at which Hock testified to the following facts.

¶4 Hock had eleven years of law enforcement experience. While on patrol on Sunday, February 12, 2017, he stopped Dotson at approximately

---

[2] *See **Miranda v. Arizona**, 384 U.S. 436 (1966).

1:21 a.m. because Dotson's vehicle displayed an unregistered temporary license plate. Hock stopped Dotson's vehicle in "an area that has several drinking establishments in it," and Hock remembered seeing this vehicle parked in front of a bar earlier during his shift.[3]

¶5 Hock approached Dotson's driver's side window. Dotson had rolled down his window approximately six inches and was smoking a cigarette. Hock talked with Dotson and obtained his driver's license and vehicle registration. Hock thought Dotson's actions were unusual because normally "everybody rolls their window all the way down." In Hock's experience, a driver keeping his or her window rolled up or smoking a cigarette are tactics someone uses to try to hide something or to conceal the smell of intoxicants or marijuana in the vehicle or on the driver's breath.

¶6 When Hock returned to his squad car, he thought Dotson might have been intoxicated, but Hock believed he did not "have anything to go on at that point." Hock ran a warrant check and learned that Dotson had an outstanding warrant for his arrest. Hock therefore returned to Dotson's vehicle to detain him on that warrant.

¶7 Hock asked Dotson to step out of his vehicle. Dotson did not immediately comply. Hock was about to smash Dotson's driver side window due to Dotson's failure to comply with his request, when Dotson rolled up his window and voluntarily stepped out of the vehicle. Hock thought this behavior was unusual and indicative of someone who was trying to hide something.

---

[3] Hock did not specify precisely when during his shift he saw Dotson's vehicle parked outside of a bar.

¶8     Hock placed Dotson under arrest, and as he did so, he smelled "the odor of intoxicants" on Dotson's person.  Although Hock recognized the smell of alcohol, he could not remember at the suppression hearing whether the odor was mild or strong.[4]

¶9     Hock then drove Dotson to the sally port of a nearby hospital, where he underwent FSTs at Hock's request.  Dotson subsequently submitted both to a preliminary breath test that returned a reading of 0.14 and to a blood draw.

¶10     The circuit court orally denied Dotson's motion to suppress the evidence resulting from Hock's OWI investigation.  It concluded that under the totality of the circumstances, Hock reasonably suspected that Dotson "had been consuming alcohol."  Dotson subsequently pleaded no contest to second-offense OWI.  He now appeals.[5]

## DISCUSSION

¶11     Dotson does not dispute that Hock had reasonable suspicion to stop his vehicle because it had an unregistered temporary license plate, nor does he dispute that Hock had probable cause to arrest him based upon an outstanding warrant.  The sole issue on appeal is whether Hock had reasonable suspicion to conduct FSTs after he arrested Dotson on the outstanding warrant.  The State

---

[4] After Dotson was in custody, Hock asked Dotson if he had been drinking.  Dotson admitted that he had, but the circuit court later suppressed his statements because they were obtained in violation of *Miranda*.  The court's decision in this regard is not at issue on appeal, and the court did not rely on Dotson's statements in determining the lawfulness of Hock's OWI investigation.

[5] A circuit court's order denying a motion to suppress evidence may be reviewed on appeal from a judgment of conviction notwithstanding a defendant's no-contest plea.  *See* WIS. STAT. § 971.31(10).

tacitly concedes that if Hock did not have reasonable suspicion to conduct FSTs, then Dotson's Fourth Amendment rights were violated and his suppression motion should be granted.[6]

¶12     A party seeking suppression based on a Fourth Amendment violation presents a question of constitutional fact.  ***State v. Brown***, 2020 WI 63, ¶8, 392 Wis. 2d 454, 945 N.W.2d 584.  We will uphold the circuit court's findings of historical fact unless they are clearly erroneous.  ***Id.***  However, we independently apply those facts to constitutional principles.  ***Id.***

¶13     A traffic stop initiated lawfully can become unlawful if it is prolonged beyond the time reasonably required to effectuate the purpose of the stop.  *See* ***State v. Hogan***, 2015 WI 76, ¶35, 364 Wis. 2d 167, 868 N.W.2d 124. After a stop is made, an officer may expand the scope of inquiry only to investigate "additional suspicious factors" that come to the officer's attention.  ***Id.*** "An expansion in the scope of the inquiry, when accompanied by an extension of time longer than would have been needed for the original stop, must be supported by reasonable suspicion."  ***Id.***

¶14     Reasonable suspicion requires more than an officer's "inchoate and unparticularized suspicion or hunch."  ***State v. Post***, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634 (citation omitted).  Rather, an officer's reasonable suspicion must be supported by specific and articulable facts that, taken together with

---

[6] The parties do not address what impact, if any, Dotson's arrest might have on the reasonableness of his detainer for the OWI investigation.  We therefore do not further address this issue.  *See* ***Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (holding that this court will not abandon its neutrality to develop arguments for a party).

objectively reasonable inferences from those facts, indicate that wrongful activity may be afoot. *See id.*, ¶¶10, 28. Whether an officer had reasonable suspicion to detain an individual is a commonsense test that turns on the totality of the facts and circumstances. *See id.*, ¶13.

¶15    We conclude that Hock lacked the reasonable suspicion necessary to conduct FSTs. To begin, not every person who has consumed alcoholic beverages prior to operating a motor vehicle is "under the influence" of an intoxicant in violation of Wisconsin law. *See* WIS JI—CRIMINAL 2663. The law instead prohibits a person from driving with a PAC—which, as relevant here, is 0.08—or from driving under the influence of an intoxicant "to a degree which renders him or her incapable of safely driving." WIS. STAT. §§ 340.01(46m); 346.63(1)(a), (b). Accordingly, we agree with Dotson that the critical inquiry here is whether Hock could reasonably suspect Dotson drove with a PAC or had consumed enough alcohol to impair his ability to drive. *See State v. Gentry*, No. 2012AP56-CR, unpublished slip op. ¶6 (WI App May 24, 2012). Although the circuit court concluded that Hock reasonably suspected Dotson "had been consuming alcohol," that fact is insufficient by itself to provide Hock with reasonable suspicion to detain Dotson to undergo FSTs.

¶16    We agree with Dotson that the totality of the circumstances did not give rise to a reasonable suspicion that he was operating with a PAC. Any evidence about whether Dotson had actually consumed alcohol before driving, such as when and where he drank alcohol and the number of beverages he consumed, was suppressed because Hock did not administer *Miranda* warnings to Dotson after his arrest and prior to questioning. And, although Hock could smell alcohol on Dotson's person, Hock could not recall if the odor was mild or strong. Further, Hock did not testify that Dotson exhibited any outward signs of

6

intoxication or impairment; Hock testified that he did not observe Dotson having glassy or watery eyes, and Hock could not recall whether Dotson had slurred speech or difficulty with balance. Hock therefore had no reasonable basis to suspect that Dotson operated his vehicle with a PAC.

¶17 We further agree that Hock lacked a reasonable basis to suspect that Dotson had consumed enough alcohol to impair his ability to drive. The State asserts that the totality of the following seven facts made Hock's suspicion reasonable: (1) the stop occurred at 1:21 a.m. on a weekend; (2) the stop occurred in a "bar district"; (3) Dotson's vehicle had been parked outside a different bar earlier in the night; (4) Dotson was smoking a cigarette, which, in Hock's experience, drivers sometimes do when attempting to disguise the odor of intoxicants or marijuana; (5) Dotson rolled down his window about six inches, which, in Hock's experience, was unusual and suggested Dotson was trying to conceal an odor from escaping the vehicle; (6) Dotson rolled up his window completely, contrary to Hock's instruction, before exiting the vehicle; and (7) Hock could smell the "odor of intoxicants" on Dotson during his arrest. The State argues that "[e]ach of the factors mentioned by Officer Hock is a building block that accumulates, and once the smaller blocks are combined with the biggest block of all, *i.e.*, the odor of intoxicants, they together give rise to a reasonable suspicion that something unlawful is afoot."

¶18 We reject the State's argument because we conclude the reasonable inferences from the aggregated facts do not objectively lead to an inference that Dotson's ability to drive his vehicle was impaired. At best, given the totality of the facts the State relies on, Hock could reasonably conclude that Dotson had consumed alcohol prior to driving and that he wanted to hide this fact from Hock. As noted above, however, the consumption of alcohol before driving, without

more, is not illegal in Wisconsin. Thus, the "building blocks" here did not give rise to a reasonable suspicion that "something unlawful was afoot"—i.e., Hock could not reasonably infer that Dotson was impaired while driving from the totality of these facts.

¶19    Dotson correctly observes that there are very few published cases with facts similar to those in this case because, unlike other OWI cases, here there was no evidence that Dotson had been driving recklessly or inattentively. Nonetheless, we find instructive our analysis in *County of Sauk v. Leon*, No. 2010AP1593, unpublished slip op. (WI App Nov. 24, 2010).

¶20    In *Leon*, a law enforcement officer on routine patrol at 11:04 p.m. on a Friday encountered Leon's vehicle parked in a lane of traffic on a highway frontage road. *Id.*, ¶¶2-3. The officer observed Leon and a companion outside of their vehicle "flailing their arms" while they were on the frontage road, in what appeared to be some type of disagreement. *Id.*, ¶4. When the officer made contact with Leon, his breath smelled of alcohol, but neither party asked the officer at the suppression hearing to testify about the odor's intensity. *Id.*, ¶9 & n.3. Leon admitted that he had consumed one beer during dinner a few hours prior. *Id.*, ¶10. The officer, however, "did not note any outward signs that Leon was intoxicated, such as trouble with balance, bloodshot eyes, watery eyes, or slurred speech." *Id.*

¶21    This court concluded that the totality of the circumstances did not provide the officer with the reasonable suspicion necessary to detain Leon to perform FSTs. *Id.*, ¶29. We stated that reasonable suspicion requires, at a minimum, "objectively reasonable inference[s] of wrongful conduct," and in Leon's case there were virtually no indicia of actual impairment. *Id.*, ¶28. We

8

further observed that there were no facts tying Leon's role in the roadside disagreement to any particular indicia of his suspected impairment or driving with a PAC. *See id.*, ¶24. In addition, we gave little weight to the fact that the incident occurred late on a Friday evening given the totality of the other circumstances—i.e., the lack of other evidence of actual impairment. *See id.*, ¶25. Thus, we determined that Leon's

> admission of having consumed one beer with an evening meal, together with an odor of unspecified intensity, are not sufficient "building blocks" representing specific and articulable facts supporting reasonable suspicion that Leon had become less able to exercise the clear judgment and steady hand necessary to control his car due to drinking.

*Id.*, ¶28.

¶22 As in ***Leon***, notably absent in this case are virtually any articulable facts that Dotson had "consumed a sufficient amount of alcohol to cause [him] to be less able to exercise the clear judgment and steady hand necessary to handle and control a motor vehicle." *See* WIS JI—CRIMINAL 2663. Without such facts, the inferences of impairment from the first six facts the State relies on above, coupled with the odor of alcohol on Dotson's person, did not give rise to a reasonable suspicion that he had been driving his vehicle unlawfully.

¶23 The State correctly notes that a traffic stop for a suspected OWI occurring on a weekend morning near a bar district are facts that, in most cases, reasonably add to an officer's suspicion that the driver is guilty of OWI. *See, e.g.*, ***State v. Lange***, 2009 WI 49, ¶32, 317 Wis. 2d 383, 766 N.W.2d 551; ***Post***, 301 Wis. 2d 1, ¶36. Yet, Dotson's case is critically different from many of the cases the State relies on because Dotson was stopped for an infraction having nothing to do with impaired or imprudent driving. As we observed in ***Leon***, the inference of

impairment from these facts is much weaker when the totality of the circumstances lacks some degree of bad or otherwise imprudent driving. *See Leon*, No. 2010AP1593, ¶20.

¶24 The same is true for the inferences of impairment drawn from Dotson only partially rolling down his window, smoking a cigarette, and rolling his window up contrary to Hock's instruction before exiting the vehicle. Hock did not testify that Dotson's actions evidenced any impairment. Instead, Hock inferred that those actions evidenced Dotson's desire to hide the fact that he had consumed alcohol before driving. However, what Hock construed to be evasive tactics, together with his other observations, do not give rise to reasonable suspicion that Dotson drove while impaired.

¶25 The State's remaining arguments are also unpersuasive. It extensively discusses our supreme court's decision in *County of Jefferson v. Renz*, 231 Wis. 2d 293, 603 N.W.2d 541 (1999). That case held the "probable cause to believe" standard required for an officer to request a preliminary breath test is a degree of proof higher than the reasonable suspicion necessary to justify an investigative stop but less than that required to establish probable cause for arrest. *Id.* at 314.

¶26 The State claims Dotson is advocating that a "much higher level of probable cause is needed for a law enforcement officer to administer []FSTs— essentially asserting that the reasonable suspicion to administer []FSTs is akin to the probable cause needed to *arrest* an individual for OWI." But we agree with Dotson that the State's reliance on *Renz* is odd because Dotson does not dispute the issues considered by the *Renz* court. Dotson properly argues that reasonable suspicion was the required standard for Hock to administer FSTs. *Renz* is plainly

irrelevant to the issues on appeal, and the State's reliance on *Renz* is therefore misplaced.

¶27    The State also argues that we should not rely on WIS JI—CRIMINAL 2663 in our analysis because "an arresting officer will rarely have knowledge of the driver's ability 'to exercise the clear judgment and steady hand necessary to control a motor vehicle' until *after* the driver has performed []FSTs." We disagree.   As Dotson correctly observes, OWI cases often begin with the driver being stopped for some type of unusual, unsafe, or illegal driving, and with other clues of physical intoxication then observed that provide the officer with the reasonable suspicion necessary to believe the driver is impaired before FSTs are conducted.  *See, e.g.*, *State v. Anagnos*, 2012 WI 64, ¶¶56-58, 341 Wis. 2d 576, 815 N.W.2d 675; *Lange*, 317 Wis. 2d 383, ¶¶23-34; *Post*, 301 Wis. 2d 1, ¶¶35-36; *State v. Waldner*, 206 Wis. 2d 51, 57-59, 556 N.W.2d 681 (1996).  We therefore reject the State's assertion.

¶28    In all, we recognize that this is a close case.  Although Hock was not required to actually observe unlawful conduct to support a finding of reasonable suspicion, the facts known to him did not objectively permit a reasonable inference that Dotson had engaged in unlawful conduct.  Instead, as the circuit court found, the totality of the circumstances permitted Hock to reasonably infer Dotson drove a vehicle after consuming alcohol.  This is lawful conduct in Wisconsin, however, without additional evidence supporting an inference that Dotson drove while impaired or with a PAC.  Accordingly, Hock lacked the reasonable suspicion required to administer FSTs, and the court erred in denying his motion to suppress evidence on those grounds.  We therefore reverse the judgment, reverse that part of the order denying the suppression motion, and remand for further proceedings.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.