STATE of Wisconsin, Plaintiff-Respondent,

v.

David M. TRUAX, Defendant-Appellant.†

Court of Appeals

*No. 88–1553–CR. Argued May 10, 1989.—Decided June 14, 1989.*

(Also reported in 444 N.W.2d 432.)

†Petition to review denied.

355

On behalf of the defendant-appellant, there were briefs and oral argument by *William J. Tyroler,* assistant state public defender.

On behalf of the plaintiff-respondent, there was a brief by *Donald J. Hanaway,* attorney general, and *David J. Becker,* assistant attorney general. There was oral argument by *David J. Becker,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. David M. Truax appeals from a judgment convicting him of the first-degree murder of his wife while armed with a dangerous weapon, to wit, a baseball bat. Truax raises two arguments. First, he contends that the trial court should have excluded evidence obtained from him during custodial interrogation because he was illegally arrested. The trial court had held that Truax was not under arrest. We affirm on a different basis, concluding that even if Truax was under arrest, probable cause for arrest existed. Therefore, the statements Truax made after being read his *Miranda* rights were properly admitted into evidence.

Second, Truax argues that the trial court erred in refusing to instruct the jury on the lesser-included offense of homicide by reckless conduct. We conclude that, under the facts of this case, and considering that the jury was given instructions on both first-degree and second-degree murder and found Truax guilty of the greater offense, any error by omitting the instruction was harmless. We therefore affirm the judgment of conviction.

In the early morning hours of May 14, 1987, police officers responded to the residence where Truax lived with his wife and two children. The officers found Truax covered with blood, extremely agitated and shouting,

"She's shot." Truax's wife was found on the bedroom floor with a large gaping wound in the right rear portion of her head. The floor, walls and bed were covered with blood.

An officer was assigned to "keep an eye" on Truax. Truax was outside the residence. He was pounding the garage and driveway with his fists, banging his head on the driveway and vomiting. Truax was taken to the hospital in the rescue squad because of ulcer cramps and hyperventilation.

While at the hospital, Truax was read his *Miranda* rights and agreed to answer some questions. He consented to a search of his residence. When Truax was released from the hospital at approximately 6:00 a.m., he was taken to the police station. The evidence conflicts on the question of whether the officers considered Truax in custody at this time.

At first, Truax said he had been sleeping in a tent in the yard with his son and went into the house because he saw water coming out of the back room. He noticed that the 150-gallon aquarium was broken, went to get his wife to help him, and that was when he noticed her injuries and that she was dead. Because of certain discrepancies between his statement and the physical evidence, the officers continued to question him. He consented to and was given a polygraph examination at approximately 10:00 a.m. Interrogation continued, and around 1:00 p.m. Truax confessed. He told the officers that the baseball bat could be found in the attic covered with insulation. A taped statement was then taken.

At trial, a pathologist testified that the victim died as a result of two blows to her skull, either one of which would have caused death instantly. He also testified that because the two wounds were so parallel, the blows must have occurred within a split second of each other.

Truax's trial testimony was that he was sleeping in the tent and went into the house around 1:00 a.m. because he wanted to spend time with his wife as she had recently returned from a trip. She told him to leave. On the way back to the tent, he saw the baseball bat in the kitchen. He decided he "was going to win this argument" by hitting the waterbed, exploding it, and forcing her to get up.

He testified that he couldn't see in the bedroom because the lights were off. He knew that when he was previously in the room, his wife was on the east side of the bed. He approached the west side and, without trying to hit her, swung down at the bed. He testified that he was shocked when he heard a "thump." He walked one or two steps to turn on the light. He saw that blood was coming out of her mouth and her body was shaking. He testified that he panicked, turned off the light, and struck her again. Also admitted into evidence were Truax's prior statements that after seeing her body shaking, he was "grossed out" and struck her again "to stop it."

The jury was instructed on the elements of both first-degree and second-degree murder. Truax requested that the instruction for homicide by reckless conduct also be given. The trial court refused to give this instruction because it concluded that "[n]o reasonable view of the evidence would support a characterization of the conduct of the defendant as being merely reckless."

The jury found Truax guilty of first-degree murder while armed with a dangerous weapon. He was convicted and sentenced to life imprisonment plus five years.

Truax first argues that the trial court should have excluded all evidence obtained from him, including his statements and all tangible evidence, e.g., the baseball bat, which was obtained as a result of his statements.

358

The basis for his argument is that the officers lacked probable cause to arrest him and any custodial interrogation was thus constitutionally impermissible.

Truax argues that, from an objective standpoint, he was under arrest when he left the hospital and was "requested" to come to the station. The trial court found that Truax was not in custody then or at any time at the station up until he confessed.

The state's response is two-fold. First, the state argues that Truax was not under arrest or in custody. Alternatively, the state takes the position that even if Truax was under arrest, probable cause existed.

█

In his reply brief, Truax responds that the state is estopped from arguing that probable cause existed because it was never argued below. This is incorrect. Respondents are not bound to the same constraints of the waiver rule as appellants. *State v. Holt,* 128 Wis. 2d 110, 124-25, 382 N.W.2d 679, 686-87 (Ct. App. 1985). We may sustain the trial court's holding on a theory not presented to it, and it is inconsequential whether we do so *sua sponte* or at the urging of a respondent. *Id.* at 125, 382 N.W.2d at 687.

Truax concedes this, but argues that *Holt* is inapplicable when the defendant is deprived of an opportunity to develop all pertinent facts. While this argument may have merit in other cases, we are not persuaded in this case. Abundant facts were presented during the trial on the entire scenario. As discussed below, even if we examine only those facts which are undisputed, we are able to conclude that probable cause to arrest existed.

█

Probable cause to arrest refers to that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime.

*State v. Woods,* 117 Wis. 2d 701, 710, 345 N.W.2d 457, 463 (1984). Probable cause to arrest is to be judged by the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act. *State v. Wilks,* 117 Wis. 2d 495, 502, 345 N.W.2d 498, 501 (Ct. App. 1984), *cert. denied,* 471 U.S. 1067 (1985).

The evidence need not be sufficient to show guilt beyond a reasonable doubt, nor even to prove that guilt is more probable than not. *State v. Dunn,* 121 Wis. 2d 389, 396, 359 N.W.2d 151, 154 (1984). The information need only lead a reasonable officer to believe that guilt is more than a possibility. *State v. Cheers,* 102 Wis. 2d 367, 386, 306 N.W.2d 676, 684 (1981).

If historical facts are undisputed, probable cause for arrest is a question of law which we review independently. *Woods,* 117 Wis. 2d at 710, 345 N.W.2d at 462. Although certain facts are disputed here, their resolution is not necessary to a determination of probable cause. We therefore confine our assessment to the undisputed facts. However, we are not limited to the facts as presented at the suppression hearing and may examine pertinent trial evidence as well. *State v. Griffin,* 126 Wis. 2d 183, 198, 376 N.W.2d 62, 69 (Ct. App. 1985), *aff'd,* 131 Wis. 2d 41, 388 N.W.2d 535 (1986), *aff'd,* 483 U.S. 868 (1987).

At the time Truax was released from the hospital, which is when Truax argues he was improperly arrested, the police knew the following. Truax's wife had been found dead in their bedroom around 1:00 a.m. Truax and their two small children were home at the time. The victim had died from a blow to the head with a blunt instrument, although Truax told the police he had heard

a gunshot. There were no signs of forced entry into the home. There was a lot of blood at the scene, including blood spatters on the walls and other surfaces. Truax was also covered with blood and attempted to explain this by saying he had held his wife's body after finding her. However, some of the officers noticed that the blood on Truax's sweatshirt was spattered.

██

We conclude that the circumstances known to the police when Truax left the hospital could lead a reasonable officer to believe that Truax's guilt was more than a possibility. Of particular note are the facts concerning the gunshot which Truax said he heard and the lack of forced entry. Because probable cause to arrest Truax existed and because Truax was read his *Miranda* rights prior to any interrogation, the trial court's denial of his suppression motion is affirmed.

Truax also argues that the trial court erred when it refused to instruct the jury on the lesser-included offense of homicide by reckless conduct. The jury was instructed on first-degree and second-degree murder.[1]

We requested oral argument on the question of how the jury should be instructed to progress through the various offenses. From Truax's briefs, we had surmised that he advocated having the jury first consider first-degree murder and then, if no consensus existed, to simultaneously consider second-degree murder and homicide by reckless conduct. It was conceded at oral argument, however, that the standard progression was contemplated. (1) The jury considers first-degree murder; (2) if no consensus exists, deliberation moves to second-degree murder; and (3) if there is still no consen-

---

[1] The basis for these instructions were secs. 940.01 and 940.02, Stats., as they existed prior to being amended by 1987 Wis. Act 399.

sus, the jury moves to homicide by reckless conduct.[2]

With that basic framework, Wis J I—Criminal 112 was appropriately given to the jury. This instruction reads in part:

> You should make every reasonable effort to agree unanimously on your verdict on the charge of [first-degree murder] before considering the offense of [second-degree murder]. However, if after full and complete consideration of the evidence, you conclude that further deliberation would not result in unanimous agreement on the charge of [first-degree murder], you should consider whether the defendant is guilty of [second-degree murder].

*Id.* (footnote omitted).

We presume that the jury follows the instructions given to it. *See State v. Deer,* 125 Wis. 2d 357, 364, 372 N.W.2d 176, 181 (Ct. App. 1985). For this reason, we are unable to conclude that the omission of the instruction

---

[2] This standard progression occurs because the offenses involved are, as the assistant attorney general phrased it, "classic" lesser-included offenses. In a "classic" situation, the greater offense contains all of the elements of the lesser-included and has at least one additional element. This situation allows the jury to disregard the lesser-included offense if agreement is reached on a finding of guilt on the greater offense. *See, e.g.,* secs. 940.02, 940.06, Stats., *as amended by* 1987 Wis. Act 399.

In the other type of lesser-included offenses, it is the lesser-included offense which has all of the elements of the greater plus a mitigating circumstance. Here, even if the jury finds all elements of the greater offense, it must consider if the presence of a mitigating circumstance necessitates a guilty finding on the lesser of the two offenses. *See, e.g.,* secs. 940.01, 940.05, Stats., *as amended by* 1987 Wis. Act 399.

on homicide by reckless conduct, even if error, has in any way prejudiced Truax.

Here, the jury was instructed to consider the offense of second-degree murder only if it could not agree on first-degree murder. The jury found first-degree murder. If any doubt existed as to the level of scienter, e.g., intent, depravity or recklessness, the jury would have rejected the greater offense.

The purpose behind requiring that instructions on lesser-included offenses be given, when the evidence warrants it, is to avoid subjecting juries to the choice of either acquitting altogether or finding the defendant guilty of the higher degree where it is convinced only of the lower degree. *See Zenou v. State,* 4 Wis. 2d 655, 668, 91 N.W.2d 208, 215 (1958). The coercive nature of such a choice is prejudicial to the defendant. However, the jury in this case was not presented with such a choice. Had doubt existed as to the propriety of a guilty finding on first-degree murder, the jury would have been able to consider second-degree murder as an alternative to outright acquittal.

Under these facts, we conclude that no prejudice can be shown by the omission of the instruction on homicide by reckless conduct. *See State v. Abreau,* 363 So. 2d 1063, 1064 (Fla. 1978); *State v. Nowlin,* 244 N.W.2d 591, 596 (Iowa 1976). Therefore, we conclude that even if it was error to refuse to give the instruction, it was harmless error and does not warrant reversal. *See State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–32 (1985).

Although many Wisconsin cases hold that failure to give a lesser-included instruction is prejudicial, we do not read these cases as forbidding a harmless error anal-

ysis in the unique situation presented here.[3] Rather, we are persuaded by the logic of the Florida Supreme Court:

> [I]f a defendant is charged with offense "A" of which "B" is the next immediate lesser-included offense (one step removed) and "C" is the next below "B" (two steps removed), then when the jury is instructed on "B" yet still convicts the accused of "A" it is logical to assume that the panel would not have found him guilty only of "C" (that is, would have passed over "B"), so that the failure to instruct on "C" is harmless.

*Abreau,* 363 So. 2d at 1064. While we do not decide whether such a situation always presents harmless error,

---

[3] For example, in *State v. Williford,* 103 Wis. 2d 98, 307 N.W.2d 277 (1981), the defendant was convicted of first-degree murder, the jury had been instructed on first-degree and second-degree murder, and the defendant's request for instruction on manslaughter (heat of passion) was denied. *Id.* at 101, 307 N.W.2d at 278. This case differs from the one before us in that the heat of passion element reduces what otherwise would be murder to manslaughter. *See id.* at 113, 307 N.W.2d at 283. Therefore, it is not a "classic" lesser-included offense. *See supra* note 2.

Another similar case, *Boyer v. State,* 91 Wis. 2d 647, 284 N.W.2d 30 (1979), involved a conviction for first-degree murder, instructions on first-degree and second-degree murder, and requested instructions on third-degree felony murder and homicide by reckless conduct. *Id.* at 660, 284 N.W.2d at 35. There, the supreme court easily concluded that instruction on the lesser-included offenses was not warranted, basing its decision on the prior rule that the defendant was bound by his own testimony. *See id.* at 671, 284 N.W.2d at 39; *cf. State v. Sarabia,* 118 Wis. 2d 655, 663, 348 N.W.2d 527, 532 (1984) (holding that, for purposes of lesser-included offense analysis, the court must reject the defendant's wholly exculpatory evidence).

we conclude that under the facts here, no prejudice can be shown.

*By the Court.*—Judgment affirmed.