State of Wisconsin, Plaintiff-Respondent,
v.
Matthew T. Doughty, Defendant-Appellant.
No. 03-1688-CR.
Court of Appeals of Wisconsin.
Opinion Filed: June 2, 2004.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶1 PER CURIAM.
Matthew Doughty appeals a judgment entered upon a jury's verdict, convicting him of armed robbery with use of force and firstdegree intentional homicide. Doughty also appeals the order denying his postconviction motion for sentence modification. Doughty argues the trial court erred by (1) denying the motion to suppress his statements to police officers; and (2) failing to give the lesser-included jury instruction for second-degree reckless homicide. Doughty also claims the sentence imposed was excessive and disproportionate to the facts of this case. We reject Doughty's arguments and affirm the judgment and order.

BACKGROUND
¶2 An information charged Doughty with armed robbery and firstdegree intentional homicide, arising from the robbery and beating death of Doug Tappa. The trial court denied Doughty's motion to suppress custodial statements he made to police. Doughty was ultimately convicted upon a jury's verdict and sentenced to life imprisonment without the possibility of release. Doughty's postconviction motion for sentence modification was denied and this appeal follows.

DISCUSSION

A. Suppression Motion
¶3 Doughty argues the trial court erred by denying his motion to suppress his statements to police. When determining whether a defendant's custodial statement may be admitted into evidence, the State must show by a preponderance of the evidence that: (1) the defendant was informed of his or her Miranda[1] rights, understood them, and knowingly and intelligently waived them; and (2) the defendant's statement was voluntary. State v. Santiago, 206 Wis. 2d 3, 18-19, 556 N.W.2d 687 (1996). Here, it is undisputed that Doughty was in custody and that he was read and waived his Miranda rights before agreeing to speak to police. Therefore, the only issue on appeal is whether Doughty's statement was voluntary. Voluntariness is a question of constitutional fact. State v. Moats, 156 Wis. 2d 74, 94, 457 N.W.2d 299 (1990). In reviewing questions of constitutional fact, we uphold a circuit court's factual findings unless clearly erroneous, but we independently determine whether those facts meet the constitutional standard. State v. Samuel, 2002 WI 34, ¶15, 252 Wis. 2d 26, 643 N.W.2d 423.
¶4 Doughty claims his statements were rendered involuntary as a result of coercive police conduct. Specifically, Doughty claims "he was placed in solitary confinement for almost two weeks, was denied the opportunity to communicate with members outside the prison system and was subjected to having his mail searched and [he was] prohibited from leaving the facility." Doughty thus argues that the "repeated interrogations that were taking place under situations in which Doughty was kept in segregation and could not communicate with others slowly wore down his willpower leading Doughty to finally confess his crimes to officers." We are not persuaded.
¶5 Our supreme court has held that a defendant's statements are voluntary if they are "the product of a free and unconstrained will, reflecting deliberateness of choice, as opposed to the result of a conspicuously unequal confrontation in which the pressures brought to bear on the defendant by representatives of the State exceeded the defendant's ability to resist." State v. Hoppe, 2003 WI 43, ¶36, 261 Wis. 2d 294, 661 N.W.2d 407. In determining whether Doughty's statements were voluntary, we consider the totality of the circumstances. Id., ¶38. This test requires balancing the personal characteristics of the defendant against the pressures and tactics employed by law enforcement officers to induce the statementpressures and tactics such as
the length of the questioning, any delay in arraignment, the general conditions under which the statements took place, any excessive physical or psychological pressure brought to bear on the defendant, any inducements, threats, methods or strategies used by the police to compel a response, and whether the defendant was informed of the right to counsel and right against self-incrimination.
Id., ¶39.
¶6 Doughty was taken into custody on a parole hold and confined in the Brown County jail on January 24, 2002. Although investigator Alan Phillips and Sergeant James Drootsan questioned Doughty for about thirty minutes on January 26, twenty minutes on January 27, and fifteen minutes on February 1, 2002, it is only Doughty's statements during a February 3 interview that he appears to challenge in this appeal.
¶7 Phillips testified at the suppression motion hearing that the February 3 interview began at 9:30 p.m. in an effort to appease Doughty's desire to watch the Super Bowl earlier that evening. At the outset of the interview, Doughty was read and waived his Miranda rights. Phillips testified at the motion hearing that during the course of the four-hour interview, Doughty did not complain about being tired, in pain or hungry. Further, Doughty did not appear to be under the influence of alcohol or drugs and appeared to understand the interview questions. Doughty was not handcuffed or shackled during the interview, and neither of the officers were armed.
¶8 Although Doughty claims he was held incommunicado in solitary confinement for two weeks prior to his February 3 interview, Doughty had in fact been placed on a suicide watch and transferred to a seclusion unit on February 1. While in seclusion, Doughty was not allowed to mail letters; however, he was told that he could use the telephone to call an attorney, though he never attempted to do so. The question then remains whether his two-and-a-half days in isolation were sufficient to render his inculpatory statements involuntary.
¶9 The trial court, describing the interrogations as "routine," found that there was no improper police conduct and no evidence that being in segregation caused Doughty to confess. The court found that Doughty was a "sophisticated person with respect to the criminal justice system," having had a lengthy history of police contacts and having served six years in prison. The court ultimately determined that Doughty "said what he had to say to the officers ... of his own free will." We agree.
¶10 The circumstances of Doughty's segregation were not extreme. The record establishes both that Doughty had the opportunity to call an attorney and was not otherwise especially susceptible to coercion. The record does not support Doughty's assertion that his willpower was being "slowly wor[n] down." In fact, at the suppression motion hearing, Doughty said nothing about the impact of the conditions of his confinement on his psychological status or ability to exercise his will. Under the totality of the circumstances, we conclude that Doughty's segregation did not render his statements involuntary. Therefore, the circuit court properly denied Doughty's suppression motion.

B. Jury Instructions
¶11 Doughty argues the trial court erred by failing to give the lesserincluded jury instruction for second-degree reckless homicide. At the jury instruction conference, Doughty requested that in addition to being instructed on first-degree intentional homicide, the jury be instructed on the lesser-included offenses of first-degree reckless homicide and second-degree reckless homicide. The trial court granted Doughty's request with respect to first-degree reckless homicide, but declined to give the second-degree reckless homicide instruction. Because the jury was instructed on the lesser-included offense of first-degree reckless homicide and still convicted Doughty of first-degree intentional homicide, any error in omitting the requested instruction was harmless.[2]See State v. Truax, 151 Wis. 2d 354, 444 N.W.2d 432 (Ct. App. 1989).
¶12 Here, the jury was instructed to "make every reasonable effort to agree unanimously on the charge of first-degree intentional homicide before considering the offense of first-degree reckless homicide" and that it should consider the first-degree reckless homicide charge only if it could not reach unanimous agreement on the first-degree intentional homicide charge. It is presumed that the jury followed these instructions. See id. at 362. In Truax, this court explained:
[I]f a defendant is charged with offense "A" of which "B" is the next immediate lesser-included offense (one step removed) and "C" is the next below "B" (two steps removed), then when the jury is instructed on "B" yet still convicts the accused of "A" it is logical to assume that the panel would not have found him guilty only of "C" (that is, would have passed over "B"), so that the failure to instruct on "C" is harmless.
Id. at 364. Because the jury found Doughty guilty of first-degree intentional homicide despite being given the first-degree reckless homicide instruction, it is logical to assume that the jury would not have passed over first-degree reckless homicide to find him guilty of second-degree reckless homicide. Thus, any error in omitting the second-degree reckless homicide instruction did not prejudice Doughty.
¶13 Even on the merits, however, we conclude the trial court properly refused to give the requested instruction. Whether a lesser-included offense instruction should be submitted to a jury is a question of law that we review independently. State v. Salter, 118 Wis. 2d 67, 83, 346 N.W.2d 318 (Ct. App. 1984). A trial court engages in a two-step analysis in determining whether to submit a lesser-included offense jury instruction. See State v. Muentner, 138 Wis. 2d 374, 387, 406 N.W.2d 415 (1987). First, the court must determine whether the crime is a lesser-included offense of the charged crime. Id. Next, the court must weigh whether there is a reasonable basis in the evidence for a jury to acquit on the greater offense and to convict on the lesser offense. Id. If both steps are satisfied, the trial court should submit the lesser-included instruction to the jury if the defendant requests it. See id. In determining the propriety of a defendant's request for a lesser-included instruction, the evidence must be viewed in the light most favorable to the defendant and the requested instruction. See State v. Fitzgerald, 2000 WI App 55, ¶7, 233 Wis. 2d 584, 608 N.W.2d 391.
¶14 Here, both first- and second-degree reckless homicide are lesserincluded offenses of first-degree intentional homicide. State v. Barreau, 2002 WI App 198, ¶16, 257 Wis. 2d 203, 651 N.W.2d 12. The court noted, however, that the difference between first- and second-degree reckless homicide is that firstdegree requires proof of an additional elementspecifically, that the circumstances of the defendant's conduct showed utter disregard for human life. The second-degree instruction would have been appropriate, therefore, if there were some evidence that Doughty's actions did not show utter disregard for human life. On the contrary, the evidence showed an utter disregard for human life. Doughty, using a "good deal of force," delivered at least twenty blows resulting in at least thirty lacerations and contusions to Tappa's head. The trial court therefore properly omitted the requested instruction.

C. Sentencing Discretion
¶15 Doughty claims that the sentence imposed was excessive and disproportionate to the facts of this case. Sentencing lies within the discretion of the circuit court. See State v. Echols, 175 Wis. 2d 653, 681, 499 N.W.2d 631 (1993). In reviewing a sentence, this court is limited to determining whether there was an erroneous exercise of discretion. See id. There is a strong public policy against interfering with the sentencing discretion of the circuit court, and sentences are afforded the presumption that the circuit court acted reasonably. See id. at 681-82.
¶16 If the record contains evidence that the circuit court properly exercised its discretion, we must affirm. See State v. Cooper, 117 Wis. 2d 30, 40, 344 N.W.2d 194 (Ct. App. 1983). Proper sentencing discretion is demonstrated if the record shows that the court "examined the facts and stated its reasons for the sentence imposed, `using a demonstrated rational process.'" State v. Spears, 147 Wis. 2d 429, 447, 433 N.W.2d 595 (Ct. App. 1988) (citation omitted). "To overturn a sentence, a defendant must show some unreasonable or unjustified basis for the sentence in the record." Cooper, 117 Wis. 2d at 40.
¶17 The three primary factors that a sentencing court must address are: (1) the gravity of the offense; (2) the character and rehabilitative needs of the offender; and (3) the need for protection of the public. See State v. Sarabia, 118 Wis. 2d 655, 673, 348 N.W.2d 527 (1984). The weight to be given each of the primary factors is within the discretion of the sentencing court, and the sentence may be based on any or all of the three primary factors after all relevant factors have been considered. See State v. Wickstrom, 118 Wis. 2d 339, 355, 348 N.W.2d 183 (Ct. App. 1984). When a defendant argues that his or her sentence is unduly harsh or excessive, we will hold that the sentencing court erroneously exercised its discretion "only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." Ocanas v. State, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975).
¶18 With respect to the gravity of the offense, the court characterized this offense as a particularly "vicious crime," involving at least thirty different injuries, lacerations and contusions to Tappa's head. The court noted, "it was a crime committed with a great deal of force and energy and rage by [Doughty]." Turning to Doughty's character, the court observed that Doughty "had a record of contact with the authorities going back for 25 years," had been sentenced to prison five or six times since reaching age eighteen and had recently been paroled prior to committing the present offense. The court thus concluded that Doughty "has never been able to function on his own in society."
¶19 Although the court acknowledged the necessity to punish Doughty because of the vicious nature of the crime, it noted that imposing a life sentence with no extended supervision date was designed to protect the public. The court illustrated its concern that Doughty would present a danger to the public by quoting a letter Doughty wrote to his wife. In the letter, Doughty makes veiled threats to those individuals that "snitched" on him. The court ultimately concluded that Doughty's lack of remorse and brazen attitude toward the victim and the victim's family justified a life sentence without the possibility of release. In light of the many aggravating factors discussed by the trial court, it cannot reasonably be argued that Doughty's sentence is so excessive as to shock public sentiment. See Ocanas, 70 Wis. 2d at 185. We therefore conclude the trial court properly exercised its sentencing discretion.[3]
By the Court.Judgment and order affirmed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436 (1966).
[2] The test for harmless error is "whether there is a reasonable possibility that the error contributed to the conviction." State v. Dyess, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). A reasonable possibility is a "possibility sufficient to undermine our confidence in the conviction." State v. Williams, 2002 WI 58, ¶50, 253 Wis. 2d 99, 644 N.W.2d 919 (citations omitted).
[3] To the extent Doughty argues the American Bar Association standards relating to probation are applicable to his case, probation is not an option for a defendant convicted of a crime punishable by life imprisonment. See WIS. STAT. § 973.09(1)(c) (2001-02).