# COURT OF APPEALS
## DECISION
## DATED AND FILED

## December 29, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No. 2019AP2115-CR** | **Cir. Ct. No. 2016CF850** |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS**<br>**DISTRICT I** |

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

WILLIE JORDAN, IV,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: THOMAS J. McADAMS and GLENN H. YAMAHIRO, Judges. *Affirmed*.

Before Dugan, Graham and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Willie Jordan, IV, appeals the judgment of conviction, following a jury trial, of one count each of attempted first-degree intentional homicide, false imprisonment, armed robbery, and manufacture/delivery of heroin, all as a party to a crime. Jordan also appeals from the order denying his postconviction motion for relief. Jordan contends that the trial court erred in failing to grant a mistrial after it was advised that his codefendant's lawyer had previously represented Jordan in a prior case. Jordan also contends that his trial counsel was ineffective in multiple respects. We affirm.[1]

## BACKGROUND

**The Charges**

¶2 On February 26, 2016, Jordan was charged with one count each of attempted first-degree intentional homicide, false imprisonment, armed robbery, and manufacture/delivery of heroin, all as a party to a crime. According to the criminal complaint, on December 7, 2015, Jordan, Mario Wood,[2] and Ariella Webb went to M.M.'s home and brutally attacked her. The complaint stated that Jordan was upset because he had lent M.M., his former girlfriend, a firearm which had gone missing. Jordan and Webb bound M.M.'s wrists and feet with duct tape while Wood held her down. Wood pointed a gun at M.M. and M.M. was pistol whipped and punched. They also burned M.M.'s legs with a fork heated on a

---

[1] The Honorable Thomas J. McAdams presided over the trial and entered the judgment of conviction. The Honorable Glenn H. Yamahiro denied Jordan's postconviction motion.

[2] Wood was not named in the complaint, but rather was referred to as "Double R," the name by which he was known to the victim.

2

stove. Jordan later forcefully injected M.M. with heroin, causing M.M. to lose consciousness. M.M. woke up in a hospital and later discovered that several items were stolen from her residence.

**The Trial**

¶3 The matter proceeded to trial where Jordan and Wood did not initially object to the State's motion that they be tried jointly. M.M. testified in detail about the attack. M.M. testified that Jordan, her former boyfriend, gave her a gun that she later could not find. When M.M. told Jordan that she could not find the gun, Jordan became angry and came to her home with Wood and Webb. Jordan and Wood proceeded to violently attack M.M. Webb assisted Jordan and Wood with the attack. M.M.'s testimony about the details of the attack were consistent with the criminal complaint. As relevant to this appeal, M.M. also told the jury that Jordan's nickname was "Dinero," and she told the jury Jordan's phone number.

¶4 Before the completion of M.M.'s cross-examination, and outside of the presence of the jury, Wood agreed to plead guilty to one count of attempted first-degree intentional homicide. The State agreed to recommend no more than twenty years of initial confinement followed by twenty years of extended supervision, contingent on Wood testifying truthfully for the State against Jordan. Jordan's counsel moved for a mistrial, telling the trial court that Wood's absence at trial would lead to speculation among the jurors and would infringe on Jordan's right to a fair trial. The trial court denied the motion, and upon the jury's return, informed the jury that Wood would no longer be present for trial but that the jury was required to ensure Jordan a fair trial. The trial resumed with continued testimony from M.M. and multiple other witnesses.

¶5     Webb testified that on the evening of December 6, 2015, she went with Jordan and Wood to M.M.'s home. When they arrived, Webb stayed in the car while Jordan and Wood went inside. Shortly thereafter, Jordan called Webb to come into the home. Webb stated that when she went inside, Jordan closed the curtains and began beating and duct taping M.M. Webb testified that Jordan burned M.M. with a heated fork. Webb described the continued attack on M.M. Webb also stated that she witnessed Jordan take a needle from his pocket, put a pillow over M.M.'s face, and then inject her. Webb stated that M.M. fell asleep almost immediately, and then Jordan injected M.M. again.

¶6     The following day, Jordan's trial counsel again moved for a mistrial, this time on the grounds that Wood's counsel, Thomas Harris, had previously represented Jordan in a prior incident. Jordan's counsel told the trial court that Harris represented Jordan in a 2011 case in which Jordan was charged with possession of a firearm. Jordan pled guilty in that matter. Jordan's trial counsel told the court that

> while [Harris] was representing Mr. Wood and Mr. Wood was a co-defendant proceeding at trial[, Harris] wasn't representing an individual whose interest[s] were contrary to Mr. Jordan's. Now that Mr. Wood has entered a plea and is apparently prepared to testify against Mr. Jordan, certainly a lawyer would have a duty to former clients under the Supreme Court Rules, and based upon that because he had previously represented Mr. Jordan, I believe that the appropriate remedy in this matter at this time … will be that of a mistrial[.]

The trial court took the motion under advisement until it could question Harris.

¶7     The trial continued with testimony from multiple witnesses. James Brooks told the jury that on the night of the incident, he was at a home on 3rd and Orchard Streets with Jordan, Wood, and Webb, and that Jordan was upset with

M.M. Brooks stated that Jordan, Wood, and Webb left for M.M.'s house and that when they all returned, Webb told Brooks that they "messed" M.M. up. Brooks stated that Jordan said that he "hot toddied that bitch," which Brooks interpreted as injecting M.M. with "[h]igh doses of heroin."

¶8 Milwaukee Police Officer Matthew Tracy testified that on December 29, 2015, he executed a warrant for the home on 3rd and Orchard. Tracy testified that officers located a binder/notebook that contained a phone number, identified as belonging to "Dinero."

¶9 Joseph Tang, a Senior Criminal Intelligence Analyst with the Wisconsin High Intensity Drug Trafficking Area Program, testified that he reviewed data for the number identified as belonging to Dinero and plotted the tower data for certain periods of time on December 6, 2015.[3] Tang testified that the number was in the area of 3rd and Orchard once on the afternoon of December 6, 2015, and again shortly after midnight, and that the phone was in the range of M.M.'s home in between that period.

¶10 Later, the trial court again addressed Jordan's motion for a mistrial. Harris stated that he had no recollection of his previous representation of Jordan, telling the court that his prior representation of Jordan "didn't factor into anything that I've done [in the current trial]. What I did, and the way I proceeded is because it was in my present client Mario Wood's best interest." The trial court stated, "I haven't heard of or been able to discern any type of nexus between the prior case … and this case in terms of subject matter, in terms of communications,

---

[3] The criminal complaint states that the incident occurred on December 7, 2015; however, trial testimony indicates that the incident took place on December 6, 2015.

in terms of privileged testimony, whatever. So it sounds like they are separate and distinct matters and they are[.]" The court then addressed Wood who indicated that he did not want Attorney Harris to continue to represent him, claiming that Harris forced him to plead guilty. The court allowed Harris to withdraw and appointed new counsel for Wood. Wood later testified. His testimony was largely consistent with the testimony presented by M.M. and Webb.

¶11 Jordan called two alibi witnesses who testified that Jordan could not have been at M.M.'s home during the time of the attack. Jordan also testified, denying any involvement in the attack.

¶12 The jury found Jordan guilty as charged. The trial court sentenced Jordan to an eighty-year term of incarceration consisting of fifty years of initial confinement and thirty years of extended supervision.

**Postconviction Motion**

¶13 Jordan filed a postconviction motion for a new trial arguing that the trial court erred in denying his motion for a mistrial because Harris had a conflict of interest. Jordan also argued that his own counsel was ineffective for: (1) failing to seek a cautionary instruction regarding Wood's mid-trial guilty plea; (2) failing to object to the admission of the notebook, which contained a phone number that was tracked to the scene of the incident; and (3) failing to object to references of Jordan's "drug dealing."

¶14 The postconviction court denied the motion. This appeal follows. Additional facts will be included as relevant to the discussion.

**DISCUSSION**

¶15    On appeal, Jordan renews the arguments raised in his postconviction motion.  We address each in turn.

**Motion for a Mistrial**

¶16    The decision to grant a mistrial rests within the trial court's sound discretion.  ***State v. Sigarroa***, 2004 WI App 16, ¶24, 269 Wis. 2d 234, 674 N.W.2d 894.  The court "must determine, in light of the whole proceeding, whether the claimed error was sufficiently prejudicial to warrant a new trial."  ***Id.*** Not every error warrants a mistrial, and "the law prefers less drastic alternatives, if available and practical."  ***State v. Adams***, 221 Wis. 2d 1, 17, 584 N.W.2d 695 (Ct. App. 1998) (citation omitted).

¶17    The basis of Jordan's motion was that Harris previously represented Jordan in a 2011 felon in possession matter and therefore had conflicted interests in representing Wood as Jordan's co-defendant.  In rendering its decision, the trial court discussed SCR 20:1.9, which addresses duties to former clients.  The rule provides:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in a writing signed by the client.
>
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:
>
> > (1) whose interests are materially adverse to that person; and

(2) about whom the lawyer had acquired information protected by sub. (c) and SCR 20:1.6 that is material to the matter; unless the former client gives informed consent, confirmed in a writing signed by the client.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as these rules would permit or require with respect to a client.

¶18    The trial court found that the matters at issue were not substantially related and had no effect on Jordan's right to a fair trial. Upon review of the record, we are satisfied that the trial court properly exercised its discretion in denying Jordan's mistrial motion. We note first, that Harris told the court that he had no recollection of ever representing Jordan, nor did he recall any details about the case. The trial court credited Harris's representations, and we have no reason to doubt them. Therefore, the likelihood that Harris had any information about Jordan that was detrimental to his case was virtually non-existent. Moreover, as the trial court noted, the matters at issue were not substantially related. Harris represented Jordan in a 2011 case for felon in possession of a firearm when a gun he claimed was kept for self-defense was recovered from under the driver's seat of his vehicle. Here, the charges against Jordan stemmed from an incident that involved brutal violence, multiple people, and drugs. There is no factual similarity between the 2011 case and the charges at issue in the case at bar. The trial court properly exercised its discretion in denying Jordan's motion for a mistrial.

**Ineffective Assistance of Counsel**

¶19    Jordan also renews his ineffective assistance of counsel claims, arguing that his trial counsel was ineffective for:  (1) failing to seek a cautionary instruction regarding Wood's mid-trial guilty plea; (2) failing to object to the admission of the notebook, which contained a phone number that was tracked to the scene of the incident; and (3) failing to object to multiple drug references.

¶20    To prevail on a claim of ineffective assistance of trial counsel, a defendant must show that counsel was deficient and the deficiency prejudiced his defense.  *See State v. Mayo*, 2007 WI 78, ¶33, 301 Wis. 2d 642, 734 N.W.2d 115. A defendant must successfully show both deficiency and prejudice, so if one prong is unfulfilled, we need not address the other.  *See State v. Manuel*, 2005 WI 75, ¶72, 281 Wis. 2d 554, 697 N.W.2d 811.

¶21    To prove deficiency, a defendant must demonstrate that counsel's conduct falls below an objective standard of reasonableness.  ***Strickland v. Washington***, 466 U.S. 668, 687-88 (1984).  To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

¶22    Ineffective assistance claims present us with mixed questions of fact and law.  *See Mayo*, 301 Wis. 2d 642, ¶32.  The trial court's findings of historical fact will be upheld unless clearly erroneous; whether those facts constitute a deficiency or amount to prejudice are determinations we review *de novo*.  *See id.*

9

## A. Jury Instruction

¶23 Jordan contends that his trial counsel was ineffective for failing to ask for a cautionary jury instruction regarding Wood's decision to plead guilty in the middle of the trial. We agree with the postconviction court that Jordan's argument ignores the instruction that the trial court did give after Wood pled guilty:

> All I'm going to tell you right now is that this trial will continue as to Mr. Jordan. It's not continuing as to Mr. Wood. You'll hear more about that later.
>
> Your goal here is to see that this gentleman gets a fair trial here and make the State prove its case beyond a reasonable doubt. So that's all I'm going to say for now[.]

¶24 An attorney is not deficient for failing to request an instruction that the trial court had already given on its own accord. We assume that juries follow instructions. *See State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989). Jordan has pointed to nothing in the record suggesting that the jury failed to heed the trial court's instruction. As the State noted in its response to Jordan's postconviction motion, "the jury was instructed on credibility; concessions received and that it is the jury's decision to weigh the testimony; that they were to determine only whether the defendant was guilty or not guilty." Accordingly, we conclude that Jordan has not met his burden of showing that counsel was ineffective in failing to request a cautionary instruction.

## B. Notebook Containing Jordan's Phone Number

¶25 Jordan also contends that trial counsel was ineffective for failing to object to the admission of a notebook, which contained the name "Dinero" and a phone number which was linked to both the home on 3rd and Orchard and the area

10

of M.M.'s residence on the day the crimes occurred. Jordan argues that counsel failed to challenge the authentication of the notebook because no evidence was presented as to whom the notebook actually belonged.

¶26 Whether counsel was deficient for failing to challenge the authentication of the notebook is inconsequential because Jordan cannot demonstrate prejudice in light of the trial testimony. M.M. testified in great detail about the attack. Her testimony was effectively corroborated by Webb. Brooks testified that he was with Jordan, Wood, and Webb prior to the incident and that Jordan was upset with M.M., left for M.M.'s residence with Wood and Webb, and that when Jordan returned, Jordan admitted to injecting M.M. with heroin. Moreover, the notebook was cumulative, as M.M. also provided testimony linking Jordan to the nickname "Dinero." Jordan cannot show that the result of the trial would have been different, absent the admission of the notebook.

## C. Drug References

¶27 Finally, Jordan argues that trial counsel was ineffective for failing to object to two references to him "running a drug house … [which] were irrelevant to the crimes charged and therefore inadmissible." Specifically, Jordan objects to the admission of two trial exhibits. The first exhibit was a warrant drafted for the phone records for two phone numbers associated with Jordan—the number M.M. relayed and the number traced to the 3rd and Orchard home and M.M.'s residence. The warrant and affidavit stated that Jordan was "suspected of controlling several narcotics distribution houses throughout Milwaukee, WI and [of] employing violence to maintain control over these locations." The second exhibit was the search warrant drafted and executed for the 3rd and Orchard home. The warrant

related that the residence was suspected to be involved with the commission of several drug crimes.

¶28     Jordan fails to establish that the admission of these two exhibits prejudiced his case.  Neither document was discussed beyond the bare fact that they were executed, nor were their contents shown to the jury.  The existence of the warrants was testified to but their contents were not.  There was no request to publish the documents to the jury and Jordan cannot demonstrate that the jury even considered the exhibits.  Accordingly, especially in light of the testimony of multiple witnesses, we conclude that Jordan cannot meet his burden of showing that he was prejudiced by counsel's lack of an objection to the trial exhibits.

¶29     For the foregoing reasons, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).