COURT OF APPEALS
DECISION
DATED AND FILED

October 17, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2022AP1205-CR**
**2022AP1206-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2018CF1340
2018CF3010

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

RICKCOBY DONNELL MINOR, JR.,

    DEFENDANT-APPELLANT.

       APPEALS from judgments and an order of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed*.

       Before White, C.J., Donald, P.J., and Dugan, J.

       **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  In these consolidated appeals, Rickcoby Donnell Minor, Jr., appeals the judgments convicting him of one count of trafficking a child and one count of child abuse as a party to the crime.  He also appeals the order denying his postconviction motion.  We conclude that the circuit court properly denied Minor's postconviction claims without a hearing and affirm.

## I. BACKGROUND

¶2    In March of 2018, Minor and his father were each charged with one count of trafficking a child in Milwaukee County Circuit Court Case No. 2018CF1340.  Three months later, Minor, his father, and another individual were charged with additional crimes in Milwaukee County Circuit Court Case No. 2018CF3010.  The charge that pertained to Minor was one count of child abuse (intentionally causing bodily harm) as a party to a crime.

¶3    The charges were based on S.H.'s allegations that over the course of approximately three months in 2017, when she was seventeen years old, Minor trafficked her to have sex for money in Milwaukee.  During that same time, she said Minor beat and choked her.

¶4    The charges against Minor were joined for a jury trial where the State's primary witnesses were D.M. and S.H.  D.M. testified that she was homeless and living in Madison in 2017 when she met and became friends with S.H.  Around that time, she met Minor's father, known as "P," at a hotel in Madison where he had three girls that he prostituted.  At some point, P asked D.M. to work for him, she agreed, and that summer, she stayed with P in his Milwaukee apartment.

2

¶5     According to D.M., P later went and got S.H. from Madison after S.H. told D.M. that she needed somewhere to go. P kept D.M. and S.H. separated in his apartment so they could not communicate. D.M. nevertheless could hear conversations occurring outside the bedroom where she stayed as well as P's side of phone conversations. From those conversations, she understood that P "gave" S.H. to his son, Minor. D.M. testified that she had asked P "to take [S.H.] home" or put her on a bus back to Madison, but P refused, saying that he was going to give S.H. to Minor as a birthday present. D.M. also testified that she overheard P on the phone with someone saying that he was giving his "son a hoe for his birthday." After that, S.H. was routinely with Minor, and P regularly ordered Minor on how to manage S.H.

¶6     S.H. likewise testified that she and D.M. became friends around 2017. S.H. said that she met P through D.M. when the two of them drove S.H. from Madison to Milwaukee in October 2017. S.H. went with them because she needed a place to stay. She also wanted to help D.M. leave P, which D.M. had told S.H. she wanted to do. Once at P's apartment, S.H. learned that P was prostituting D.M. S.H. testified that P gave her and D.M. drugs, such as ecstasy, and that immediately after they arrived at P's apartment, he advertised S.H. on Backpage, a website used to solicit customers for sex.

¶7     S.H. said that she met Minor within a few days after she arrived in Milwaukee. S.H. said that P gave her to Minor for his birthday as his "bitch or hoe." S.H. continued to live in P's apartment, but she and D.M. were kept apart. S.H. said that P required that she and D.M. not have contact, that she could not look other men in the eyes, and that she had to give all of her money to Minor. Minor made a Backpage ad for S.H. once P showed him how to do it. Minor also drove S.H. to "out-calls," which were sexual encounters at a customer's location.

After these "dates," Minor would pick S.H. up, and she had to give him the money she had received from the call. S.H. testified that Minor gave P some of the money she earned.

¶8 S.H. said that if she broke rules, Minor would hit her with a closed fist, slap her, and choke her. She continued to work for Minor until November 2017. S.H. ultimately escaped by running from the house when Minor and P were in a back room. She said that she found a customer after leaving, and she used the money from that transaction to take a bus to Chicago to live with a friend.

¶9 During trial, S.H. identified several Backpage ads that either she, P, or Minor posted of her offering sex and claiming that she was nineteen years old. S.H. said that she was seventeen years old at the time but P directed Minor to make S.H. indicate that she was older in the ads. In addition to S.H. and D.M., Officer Gerardo Orozco and Detective Sarah Blomme also testified for the State.

¶10 Minor did not testify or present any witnesses. Minor's defense was that his father, P, was a trafficker, but that he was not involved in his father's enterprise, and that D.M. and S.H. were lying when they implicated him.

¶11 The jury convicted Minor of both counts. The trial court imposed concurrent sentences totaling four and one-half years of initial confinement and eight years of extended supervision.

¶12 Minor filed a postconviction motion claiming that his trial counsel was ineffective for failing to (1) hire an investigator who would have identified potential witnesses to testify on Minor's behalf; and (2) request a mistrial based on statements by a jury pool member. He also sought a new trial based on newly discovered evidence, which was composed of messages between D.M. and his

4

mother, which Minor claimed constituted a recantation by D.M. Finally, Minor sought postconviction discovery of any communications between the prosecutor and S.H. and D.M.

¶13 The circuit court denied Minor's motion without a hearing. This appeal follows. Additional background information relevant to the issues raised on appeal will be included below.

## II. DISCUSSION

¶14 Minor argues that the trial court erred when it denied his postconviction claims without holding a hearing. "A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. Whether the motion alleges such facts is a question of law. *See id.*, ¶9. If, however, "the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *Id.* We review a circuit court's discretionary decisions with deference. *See id.*

¶15 We will address each of Minor's postconviction claims in turn.

### A. Minor's trial counsel was not ineffective.

¶16 Minor alleges that his trial counsel was ineffective for failing to: (1) hire an investigator, who allegedly would have discovered witnesses to support Minor's defense; and (2) request a mistrial during voir dire. Whether counsel was ineffective is a mixed question of fact and law. *See State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95. "We will not reverse the circuit court's

5

findings of fact unless they are clearly erroneous. 'Findings of fact include the circumstances of the case and … counsel's conduct and strategy.' We independently review, as a matter of law, whether those facts demonstrate ineffective assistance of counsel." *Id.* (citations and some quotation marks omitted).

¶17    Our analytical approach is familiar. We assess claims of ineffective assistance of counsel using the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail, a defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *See id.* To satisfy the deficiency prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court may consider either *Strickland* prong first, and if the defendant fails to satisfy one prong, the court need not consider the other. *See id.* at 697.

### 1.  Failing to investigate and call witnesses.

¶18    Minor contends that trial counsel was ineffective for failing to investigate and call witnesses. He claims he repeatedly asked trial counsel to hire an investigator but she did not do so. According to Minor, testimony from his friend, his former girlfriend, and his mother would have belied the assertion that he lived with his father and was constantly monitoring S.H. He contends that these individuals would have testified that they saw him regularly or a lot during the period when the crimes occurred. Minor denies that this would have been alibi

6

evidence, asserting instead that it was evidence showing that S.H.'s trial testimony was false. Minor additionally claims that his father, P, would have testified that Minor was not trafficking anyone or acting as a pimp. Minor claims trial counsel's failure to investigate deprived him of presenting his case and of a fundamentally fair proceeding.

¶19 Even if not considered as alibi evidence but rather as evidence that Minor essentially was too busy to traffic S.H., neither his friend, his former girlfriend, nor his mother were disinterested or impartial witnesses. Insofar as Minor insists that their combined testimony would have been strong circumstantial evidence that Minor could not have reasonably committed the underlying crimes, none of the witnesses could say that they were with Minor at all times during the relevant timeframe. We conclude that the allegations as to the testimony the witnesses would offer are insufficient to demonstrate a reasonable probability that the result of the trial would have been different.

¶20 Minor additionally claims P, who denied Minor's involvement in the underlying crimes, "should have been contacted after obtaining a waiver from his counsel to get his statement on record and have him testify." Minor claims this exculpatory information could have been obtained and presented to the jury "to cast reasonable doubt" at Minor's trial.

¶21 Minor's trial took place in July 2018. P "was in warrant status from June 29, 2018 [until] February 5, 2020." Indeed, in his affidavit, which was filed with Minor's postconviction motion, P said that he was "unavailable" to present testimony at Minor's trial. As the circuit court correctly concluded: "Counsel cannot be deemed ineffective for failing to present testimony from a witness who was unwilling or unable to testify at the time of trial." *See **State v. Arredondo***,

7

2004 WI App 7, ¶36, 269 Wis. 2d 369, 674 N.W.2d 647 (holding that defendant could not overcome strong presumption that counsel acted reasonably where there was nothing in the record to indicate that the allegedly omitted witness could have been produced or located at the time of trial). Insofar as Minor suggests that trial counsel was deficient for not anticipating that P would abscond and securing a statement, this would have required a clairvoyance that goes beyond what is considered competent performance.

¶22    Moreover, as found by the circuit court, the evidence in this case overwhelmingly inculpated P "in these and other offenses." Minor has not shown that presenting blanket denials from P as to Minor's involvement would have created a reasonable probability that the result of the trial would have been different.

### 2. Failing to move for a mistrial.

¶23    Next, Minor argues that trial counsel was ineffective for failing to move for a mistrial on grounds that the jury panel was tainted. At the start of voir dire, the circuit court asked the potential jurors whether they had any knowledge of the case. Juror No. 22 stated that she was employed by "a nonprofit that works with people that have been victimized by trafficking[.]" She said that she did not work directly with S.H. but that she was part of a team and was "privy to some information[.]" When asked whether she could set aside what she knew and base her decision solely on the information at trial, she said that she "could attempt" though it would be "difficult" because of her work as an advocate. Later, when asked, Juror 22 stated that based on her experience, she sometimes had negative feelings about the police, though she said she could try to be impartial in listening to police testimony.

8

¶24 In his postconviction motion, Minor claimed that Juror 22's comments compromised his right to an impartial jury and a fair trial because they impermissibly vouched for S.H.'s testimony. Although Juror 22 was struck for cause and therefore did not serve on the jury, Minor nevertheless contends that her statements were unforgettable and damaging to his case.

¶25 Like the circuit court, we note the conclusory nature of Minor's claim that the jury was tainted by Juror 22's remarks. There is no record support for his claim that Juror 22's comments tainted the jury pool. Here, the jury received standard instructions to consider only evidence heard at trial. Juries are presumed to follow their instructions. *State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989). Minor's unsupported assessment that the jury was tainted does not overcome this presumption. Consequently, he falls short of establishing that trial counsel was ineffective for the manner in which voir dire was conducted.

¶26 Alternatively, Minor asks that this court grant him a new trial in the interest of justice because the real controversy was not fully tried. *See* WIS. STAT. § 752.35 (allowing this court to reverse in its discretion "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried"). Our discretionary reversal power under WIS. STAT. § 752.35 (2021-22)[1] is to be exercised only in exceptional cases, and this is not one. *See State v. Avery*, 2013 WI 13, ¶38, 345 Wis. 2d 407, 826 N.W.2d 60.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

**B. Minor is not entitled to a new trial based on messages sent to his mother.**

¶27    Minor next argues that messages between D.M. and Minor's mother, which the two exchanged after Minor was convicted, constitute newly discovered recantation evidence justifying a new trial. A defendant seeking a new trial based on newly discovered evidence must prove, by clear and convincing evidence, all of the following:  "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." ***Avery***, 345 Wis. 2d 407, ¶25 (citation omitted).  "If the defendant is able to make this showing, then 'the circuit court must determine whether a reasonable probability exists that a different result would be reached in a trial.'" ***Id.*** (citation omitted).

¶28    Additionally, when the newly proffered evidence is based on a recantation, the recantation must be corroborated by other newly discovered evidence. ***State v. McAlister***, 2018 WI 34, ¶57, 380 Wis. 2d 684, 911 N.W.2d 77. "Corroboration requires newly discovered evidence of both:  (1) a feasible motive for the initial false statement; and (2) circumstantial guarantees of the trustworthiness of the recantation." ***Id.***, ¶58.  We review the circuit court's decision to grant or deny a motion for a new trial based on newly discovered evidence under the erroneous exercise of discretion standard. *See **State v. Plude***, 2008 WI 58, ¶31, 310 Wis. 2d 28, 750 N.W.2d 42.

¶29    Minor argues that messages between D.M. and his mother show that D.M.'s testimony at trial was false.  D.M. allegedly told Minor's mother that S.H. blackmailed her, S.H. lied when she testified, and P should be in prison. According to Minor, the messages were evidence that D.M. was recanting her testimony.  Minor contends the new information "is bolstered in trustworthiness"

given that D.M. and S.H. subsequently did not show up to testify at P's trial "raising significant questions about whether it was because they no longer stood by their statements." As for feasible motive, Minor contends D.M. testified falsely because she was blackmailed.

¶30 The circuit court rejected this claim on multiple grounds. First, the circuit court determined that "[b]ecause the messages from [D.M.] were part of a private conversation between her and the defendant's mother, they do not represent a true recantation from [D.M.]; rather, the messages arguably constitute impeachment evidence." The circuit court concluded that as such, the messages could not support the grant of a new trial. *See Simos v. State*, 53 Wis. 2d 493, 499, 192 N.W.2d 877 (1972) ("Discovery of new evidence which merely impeaches the credibility of a witness is not a basis for a new trial on that ground alone.").

¶31 Second, and alternatively, the circuit court held that even if the messages could be "construed to be a recantation, and even accepting the vague claims of being 'blackmailed' as a feasible motive for [D.M.]'s 'false' testimony, the statements completely lack any circumstantial guarantees of trustworthiness." *See State v. McCallum*, 208 Wis. 2d 463, 477-78, 561 N.W.2d 707 (1997) (explaining that circumstantial guarantees of trustworthiness can be found where the recantation is internally consistent, given under oath, consistent with circumstances existing at the time of the initial allegation, and where the recanting witness understands that the original false testimony could result in criminal charges). Contrary to Minor's assertion, we are not convinced that D.M.'s and S.H.'s nonappearance at P's trial—which could have resulted for any number of reasons—sufficiently "bolstered" the recantation in trustworthiness. Moreover, as summed up by the circuit court, "the texts are extremely vague and evasive, and it

11

is not entirely clear what specific testimony [D.M.] would recant since her testimony merely established that the defendant's father was in the business of pimping and gifted [S.H.] to the defendant."

¶32     We agree with the circuit court's rationale as to this claim and adopt this reasoning as our own.  *See* WIS. CT. APP. IOP VI(5)(a) (Nov. 30, 2009) ("When the [circuit] court's decision was based upon a written opinion ... that adequately express[es] the panel's view of the law, the panel may incorporate the [circuit] court's opinion ... or make reference thereto, and affirm on the basis of that opinion.").  The circuit court properly exercised its discretion when it denied Minor's request for a new trial based on newly discovered evidence.

## C. The circuit court properly denied Minor's motion for postconviction discovery.

¶33     Lastly, Minor asked the circuit court to grant him postconviction discovery of communications between the prosecutor and S.H. and D.M.  Minor sought information about whether S.H. and D.M. were subpoenaed for P's trial, yet failed to appear.

¶34     A defendant is entitled to postconviction discovery "when the sought-after evidence is relevant to an issue of consequence" and "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *State v. O'Brien*, 223 Wis. 2d 303, 320-21, 588 N.W.2d 8 (1999) (citation omitted).  A request for a fishing expedition is not sufficient.  *See State v. Kletzien*, 2008 WI App 182, ¶19, 314 Wis. 2d 750, 762 N.W.2d 788.  "Whether to grant a motion requesting postconviction discovery is committed to the [circuit] court's discretion."  *Id.*, ¶8.

¶35 According to Minor, if S.H. and D.M. recanted their allegations prior to P's trial, it would support his argument that D.M.'s testimony against Minor was false and forced due to blackmail. In light of the messages from D.M. to his mother, Minor contends that "it is far more probable" that the reason they did not show up is because they no longer supported their previous statements. The circuit court, in contrast, concluded that information that D.M. and S.H. were subpoenaed and failed to appear at P's trial "[i]f anything … might enhance their credibility as it supports an inference that they were afraid of the defendant's father, which is entirely consistent with how they testified."

¶36 The possibility that an item of undisclosed information *might* have helped the defense is not enough, and that is what we have here. *See **O'Brien***, 223 Wis. 2d at 321. In denying Minor's request, the circuit court noted the lack of a factual background to support his theory that S.H. would recant. We conclude the circuit court properly exercised its discretion when it denied Minor's request for postconviction discovery, which amounted to little more than a fishing expedition to search for potentially helpful evidence.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.