# COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 27, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No. 2021AP1687-CR** | Cir. Ct. No. 2020CT149 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS**<br>**DISTRICT II** |

---

STATE OF WISCONSIN,

    PLAINTIFF-APPELLANT,

V.

ERIC LOBATO,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Walworth County: DANIEL STEVEN JOHNSON, Judge. *Reversed and cause remanded for further proceedings.*

¶1 KORNBLUM, J.[1] Eric Lobato was arrested for operating a motor vehicle while intoxicated (OWI), second offense,[2] after being pulled over at about 2:00 in the morning for driving almost twenty miles per hour over the speed limit. The arresting officer observed that Lobato had bloodshot and glassy eyes and detected a strong odor of intoxicants. The officer performed field sobriety tests during which Lobato exhibited signs of impairment. Lobato refused a preliminary breath test (PBT). Following his arrest, Lobato challenged the probable cause for the PBT and the arrest. After a hearing, the circuit court determined that the officer lacked probable cause to arrest Lobato because he had "passed" two of the three field sobriety tests, which overcame all of the other factors in this case. We disagree with the circuit court's determination and reverse. We hold that under the totality of circumstances, the officer in this case had probable cause to request a PBT and to arrest Lobato.

## Background

¶2 After his arrest, Lobato was charged with operating while intoxicated, second offense. He filed a motion to suppress, arguing that the traffic stop was unconstitutionally extended when he was transported from the location of the stop to the Lake Geneva Police Department to perform field sobriety tests and that the officer lacked probable cause to arrest Lobato. The following facts are taken from the hearing on Lobato's motion, which was held on April 6, 2021 and continued on June 28, 2021. Walworth County Deputy Sheriff Daniel Simonsen, who arrested Lobato, was the only witness to testify.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] WISCONSIN STAT. §§ 346.63(1)(a), 346.65(2)(am)2.

¶3    Simonsen testified that he had a total of fourteen years of law enforcement experience, two and one-half years with the Walworth County Sheriff's Office and the remainder with a federal law enforcement agency. In the early morning hours of January 19, 2020, Simonsen was performing stationary traffic enforcement at the intersection of Highway 50 near Deer Path, in the Town of Lyons. He observed a black Dodge pickup travelling eastbound on the highway at a speed that was higher than the posted speed limit. Simonsen confirmed the vehicle's speed using radar to be seventy-four miles per hour; the posted speed limit was fifty-five miles per hour. Simonsen pursued the truck and stopped it a short time later.

¶4    Simonsen then made contact with Lobato, the driver and sole occupant of the vehicle. Simonsen asked Lobato some standardized questions, and during that conversation, he "observed bloodshot, glassy eyes as well as a strong odor of intoxicants emitting from the vehicle and his person." Simonsen asked Lobato if he had had anything to drink that night, and Lobato replied that he had had one beer. Simonsen testified that he had made between 100 and 250 arrests for OWI during his law enforcement career. Simonsen testified that based on his experience, people usually under report the amount they have been drinking. Simonsen called for a second patrol unit to assist, and when it arrived, Lobato was placed in Simonsen's squad car and transported to the Lake Geneva Police Department for field sobriety tests due to the extremely cold temperatures. The police department was 5.3 miles from the location of the stop.

¶5    After arriving at the police station, Simonsen administered three standard field sobriety tests: the horizontal gaze nystagmus test (HGN), the walk and turn, and the one-leg stand. On the HGN test, Simonsen looks for a total of six clues, three for each eye. The minimum standard for stating that a person is

impaired is four clues. Simonsen observed all six of the clues in Lobato. The body camera video showed Lobato stating that he was color blind. However, Simonsen testified that this would not have affected the HGN test.

¶6 Simonsen then had Lobato perform the walk and turn test as well. Officers look for eight clues during this test, but two clues are sufficient to indicate that a person "has a high probability of being under the influence of a drug." Initially, Simonsen saw two clues. Upon review of his body camera video, Simonsen detected a third clue. Simonsen then had Lobato perform the one-leg-stand test. On that test, there are four clues. The "minimum standard again is 2 out of the 4 to determine if the person is reliably under the—or significantly [sic] likelihood of being under the influence of alcohol or drugs." Simonsen observed one clue on this test. Simonsen testified that he did not recall if he had asked if Lobato had any physical defects that would prevent him from performing these tests. From reviewing the body camera video, Simonsen testified that Lobato had said that he was cold, but did not disclose any physical ailments.

¶7 Based on Lobato's performance on the HGN and the walk and turn test, as well as on the odor of intoxicants and his admission to having had one beer, Simonsen asked Lobato to take a PBT. Lobato refused. Based on the totality of the circumstances, Simonsen testified that he had probable cause to believe that Lobato was under the influence of a drug. Lobato was then arrested.

¶8 On cross-examination, Simonsen acknowledged familiarity with a field sobriety tests instructor guide prepared by the National Highway Traffic Safety Administration (NHTSA). Defense counsel proceeded to ask Simonsen whether he observed several indicators of impairment listed in the guide. Simonsen confirmed that he did not observe any of the attributes listed in the

guide to indicate an intoxicated driver while a vehicle is in motion, such as weaving, lane departures, swerving to avoid objects, or straddling lane lines. Simonsen also acknowledged that Lobato did not stop too far from the curb, stop abruptly, or significantly vary his speed. Furthermore, Simonsen testified that Lobato had not demonstrated any "vigilance problems" while driving, such as driving without headlights, failing to signal, or responding slowly when Simonsen activated his squad car lights. He also testified that Lobato had not exhibited any "judgment problems," such as following another vehicle too closely, making an unsafe lane change, or driving on the wrong side of the road. Simonsen acknowledged that he did not observe any of the aforementioned factors listed in the guide for detecting impaired drivers.

¶9     Simonsen further testified, contrary to his report, that Lobato did not have slurred speech. When questioned about the difference between his testimony and his report, Simonsen testified that Lobato had "mild" slurred speech, which "was more of my indication of like the way he was—umm—trying to describe stuff. Maybe it was just my basic way of saying instead of slurred speech just maybe disorientation instead." Simonsen said Lobato seemed disoriented; "I wasn't buying his story where he was going and where he was coming from and that stuff." Simonsen testified that Lobato had a "strong odor of intoxicants," but could not say whether just the odor of intoxicants indicates that someone's blood alcohol content is above the legal limit. Simonsen confirmed the odor just verifies that they have consumed an alcoholic beverage.

¶10     Regarding Lobato's bloodshot eyes, Simonsen agreed that they were not picked up on the body camera video but explained that, in his experience, this is because the lights from the squad, the "take down lights and the spot light, all that stuff" make the scene very white. The lights from his car were "essentially

bleaching out his eyes" on the video. Simonsen testified that his body camera normally does not pick out that level of detail. However, on recross examination, Simonsen admitted this was just speculation based on his experience.

¶11 As to the HGN test, Simonsen testified on cross examination that two of the six clues were possibly invalid due to the manner in which he performed the test. Even not counting those two clues, Simonsen still had observed four clues on the HGN which, based on his training and experience, indicated impairment. On the walk and turn test, the clue that was significant to Simonsen was Lobato failing to maintain his balance. Simonsen had not asked Lobato whether he suffered from any medical conditions that would affect his balance. He was not concerned that Lobato was wearing cowboy boots, because they had a low heel. Lobato also stepped off the line at step three. Simonsen was not able to quantify how far someone could deviate from the line before they are considered to have stepped off the line. On the one-leg stand, Lobato passed because he only had one clue and needed two to show impairment. Simonsen confirmed that on the video, when he asked Lobato to take the PBT, Simonsen said he already had his mind made up to arrest Lobato.

¶12 In a ruling from the bench, the circuit court found that Simonsen had reasonable suspicion to stop Lobato for speeding. The court also found that Simonsen had reasonable suspicion to prolong the stop based on the strong odor of intoxicants coming from the vehicle, Lobato being the only occupant of the vehicle, and Lobato's bloodshot and glassy eyes. The court further determined that the decision to take Lobato to the Lake Geneva Police Station was reasonable given its proximity to the location of the stop and the cold temperatures.

¶13     However, the court ruled that Simonsen did not have probable cause to ask Lobato to take a PBT or to arrest him. The court found Simonsen's testimony about detecting a strong odor of alcohol, Lobato's bloodshot and glassy eyes and admission to drinking credible. Regarding the field sobriety tests, the circuit court had mixed findings. First, the court disregarded the one-leg-stand test because "only one clue was observed in that test and Deputy Simonsen did admit that that test does not add on to probable cause to arrest." Second, the court found that Simonsen detected four clues on the HGN test based on his credible testimony, but disregarded the other two clues because of problems regarding how two parts of the test were conducted.

¶14     The major problem that the court saw, and the deciding factor in its ruling, was the walk and turn test. After reviewing the body camera video, the court discounted one of the clues—Lobato's "stepping out of the instructional stance" prior to the commencement of the test—because it did not hear Simonsen tell Lobato to remain in that stance before starting the test. The court also did not observe Lobato step off the line during the test. The court did count the clue of Lobato's raising his arms for balance during the test. The court did not consider Lobato's refusal to take the PBT important because Simonsen "testified that regardless of whether he refused the PBT or not, he was already under arrest for impaired driving." Under the totality of circumstances, the court found no probable cause for the arrest or requesting a PBT because Lobato passed two of the three field sobriety tests. The court also noted that there "was no bad driving or other indicia of intoxication except for the speeding" and stated that "the facts that ended up prolonging the stop, the bloodshot and glassy eyes, strong odor of intoxicants combined with the failure of one field sobriety test" did not provide probable cause to ask Lobato to take a PBT or to arrest him.

**Discussion**

*Standard of Review*

¶15     When reviewing a circuit court's decision on a motion to suppress evidence, we apply the clearly erroneous standard to the court's findings of fact. *State v. Guard*, 2012 WI App 8, ¶14, 338 Wis. 2d 385, 808 N.W.2d 718. However, we review the court's application of constitutional principles to those facts de novo. *Id.*

¶16     Whether Simonsen had probable cause to seek a PBT "is a legal issue that we decide de novo, accepting the [circuit] court's findings of fact unless they are clearly erroneous." *State v. Felton*, 2012 WI App 114, ¶8, 344 Wis. 2d 483, 824 N.W.2d 871.   We apply a similar standard of review to the question whether Simonsen had probable cause to arrest Lobato.  *See* *State v. Truax*, 151 Wis. 2d 354, 359–60, 444 N.W.2d 432 (Ct. App. 1989).

*Probable Cause to administer a PBT*

¶17     Wisconsin gives law enforcement officers the authority to request a PBT if they have probable cause to believe that a person is violating or has violated WIS. STAT. § 346.63(1).  WIS. STAT. § 343.303.  This level of suspicion has been described as greater than reasonable suspicion necessary for an investigative stop, but lower than probable cause for arrest.  *Felton*, 344 Wis. 2d 483, ¶8. "Probable cause is a 'flexible, common-sense measure of the plausibility of particular conclusions about human behavior." *Id.*, ¶9 (quoting *State v. Lange*, 2009 WI 49, ¶20, 317 Wis. 2d 383, 766 N.W.2d 551).

¶18     Here, the circuit court found that Lobato was speeding nineteen miles per hour over the posted speed limit at the time he was stopped.  The court

found Simonsen credible in his testimony that Lobato was the only occupant of the vehicle, smelled strongly of alcohol, had bloodshot and glassy eyes, and admitted to drinking at least one alcoholic beverage that evening.[3] The court found these facts sufficient to justify Simonsen in prolonging the stop to investigate further. The court also found that Lobato had exhibited four of six clues on the HGN test,[4] which Simonsen had testified were sufficient to indicate impairment.

¶19　The State does not challenge any of the circuit court's factual findings on appeal, and contends they were sufficient to meet the probable cause threshold in WIS. STAT. § 346.63(1). We agree. Although we accept the court's findings of fact, when reviewing the totality of the circumstances de novo, we find that the totality of circumstances gave Simonsen probable cause to request a PBT.

¶20　First, Lobato was going almost twenty miles per hour over the speed limit at about two o'clock in the morning. Our courts have recognized speeding and the time of a stop as factors that can support a finding of probable cause. *See State v. Adell*, 2021 WI App 72, ¶25, 399 Wis. 2d 399, 966 N.W.2d 115 (speeding is a relevant factor); *State v. Wheaton*, Nos. 2011AP1928, 2012AP73, unpublished slip op. ¶25 (WI App Oct. 25, 2012) ("[T]here is no dispute that the time of night may be a factor contributing to reasonable suspicion of impaired

---

[3] Lobato casts doubt on the circuit court's finding that Lobato had "bloodshot eyes." On review of the record, we conclude that the court's finding was not clearly erroneous. The court viewed the body camera video, listened to the testimony of Simonsen, and drew a reasonable inference from the evidence that the lighting in the video obscured the bloodshot condition of Lobato's eyes. Determinations of credibility and how to resolve conflicts in testimony are for the trier of fact, *State v. Poellinger*, 153 Wis. 2d 493, 503, 451 N.W.2d 752 (1990), and we see no reason to disturb the circuit court's finding on this point.

[4] Lobato argues that the circuit court should have disregarded all of the clues from the HGN test, rather than only two, because of procedural problems with conducting the test, but provides no legal authority for this assertion.

9

driving."). Second, Simonsen knew that Lobato had a prior offense for OWI, which can also be considered. *See State v. Goss,* 2011 WI 104, ¶24, 338 Wis. 2d 72, 806 N.W.2d 918. Third, Lobato had glassy, bloodshot eyes, emitted a strong odor of intoxicants, and had admitted drinking at least one alcoholic beverage that night. *See State v. Quartana*, 213 Wis. 2d 440, 448, 570 N.W.2d 618 (Ct. App. 1997). Finally, Lobato also exhibited four of six clues of impairment on the HGN test.

¶21 In reaching a contrary conclusion, the circuit court relied on the fact that Lobato had "passed" two of the three field sobriety tests. While this is certainly one factor that may be considered in assessing probable cause, it must be considered together with the other factors listed above, not in isolation. Field sobriety tests, as we have observed in another case, are not a scientific measurement of impairment. Rather, "[t]hey are observational tools, not litmus tests that scientifically correlate certain types or numbers of 'clues' to various blood alcohol concentrations." *City of West Bend v. Wilkens*, 2005 WI App 36, ¶17, 278 Wis. 2d 643, 693 N.W.2d 324. Wisconsin does not require law enforcement officers to give field sobriety tests to establish probable cause. *State v. Kennedy*, 2014 WI 132, ¶21, 359 Wis. 2d 454, 856 N.W.2d 834; *State v. Wille*, 185 Wis. 2d 673, 684, 518 N.W.2d 325 (Ct. App. 1994). Probable cause determinations are made on a case-by-case basis based on the totality of the circumstances. *State v. Kasian*, 207 Wis. 2d 611, 621-22, 558 N.W.2d 687 (Ct. App. 1996). Thus, "passing" a field sobriety test does not, by itself, preclude a finding of probable cause. *Felton*, 344 Wis. 2d 483, ¶10 ("That Felton successfully completed all of the properly administered field-sobriety tests does not … subtract from the common-sense view that Felton may have had a blood-alcohol level that violated WIS. STAT. § 346.63(1) …."). Even partial performance

10

on a field sobriety test can inform the officer and can form part of probable cause. *See* ***State v. Colstad***, 2003 WI App 25, ¶25, 260 Wis. 2d 406, 659 N.W.2d 394. The observational clues derived from the field sobriety tests add to the totality of circumstances. The circuit court did not faithfully apply the totality approach when it elevated the lack of a minimum number of clues indicating impairment on two of the tests over all of the other factors in this case.

¶22    Lobato argues that because Simonsen did not observe many of the factors in the NHTSA guide (the source), he lacked probable cause for the PBT and the arrest. As an initial matter, we note that Lobato's counsel questioned Simonsen extensively based on this source, but failed to make it part of the record or to establish that this source is the sole arbiter of the factors supporting probable cause. We do not even know its title, although from counsel's description it appears to be the DWI Detection and Standardized Field Sobriety Testing (SFST) Instructor Guide (Feb. 2018).[5] We thus cannot be sure of the source's contents. Assuming we have correctly identified the source, we previously have rejected a defendant's attempt to show a lack of probable cause based on an officer's failure to conduct field sobriety tests in accordance with the guide's instructions. ***State v. Kothbauer***, No. 2020AP1406-CR, unpublished slip op. ¶31 (WI App May 3, 2022) ("[I]n Wisconsin, there is no requirement of strict compliance with the NHTSA Manual as a prerequisite for [standard field sobriety tests] to be used in determining probable cause of an OWI-related offense."). Similarly here, nothing in the record shows that ticking off some or all of the factors listed in the guide is required to show probable cause. We have found nothing in Wisconsin law that

---

[5] Copies of this guide are available at https://www.nhtsa.gov/dwi-detection-and-standardized-field-sobriety-test-sfst-resources (last visited July 15, 2022).

11

requires that an officer must observe certain indicators of driving while under the influence listed in the guide in order to have probable cause.

¶23    Lobato further argues that he did not exhibit other factors that may indicate impairment.  This selective view of the evidence is at odds with the totality of the circumstances analysis we apply when assessing probable cause. That is, we can take note of what is absent but must consider it along with the factors suggesting impairment that are present.

¶24    Finally, Lobato argues that because Simonsen could not correlate a strong odor of intoxicants with a specific blood alcohol content in excess of the legal limit, we should disregard Simonsen's observation that he detected a strong odor of alcohol.  Lobato cannot point to any Wisconsin case that requires an officer to correlate the detection of odor of alcohol with a specific blood alcohol content, and the record is devoid of evidence that this correlation is even possible. Nor does Wisconsin law require an officer to have proof beyond a reasonable doubt that a driver has violated WIS. STAT. § 346.63(1) to seek a PBT.  Wisconsin law only requires that under the totality of circumstances, the officer has probable cause.  WIS. STAT. § 343.303.

¶25    In this case, looking at the totality of circumstances, we hold that sufficient evidence existed to lead a reasonable law enforcement officer to believe that Lobato was operating a motor vehicle while under the influence of an intoxicant.  These factors include Lobato's high rate of speed, the strong odor of intoxicants coming from the car, his bloodshot and glassy eyes, admission of drinking, and exhibition of four of six clues on the HGN.  Notwithstanding the absence of erratic driving and other indicia of impairment, these considerations were sufficient to provide probable cause to Simonsen, an experienced law

enforcement officer who had performed more than 100 OWI arrests, to request a PBT.

*Probable Cause to Arrest*

¶26    Whether Simonsen had probable cause to arrest Lobato after he refused to take a PBT depends on whether Simonsen knew of "evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime." **Truax**, 151 Wis. 2d at 359.  "Probable cause to arrest is to be judged by the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act." **Id.** at 360.  "The evidence need not be sufficient to show guilt beyond a reasonable doubt, nor even to prove that guilt is more probable than not.  The information need only lead a reasonable officer to believe that guilt is more than a possibility." **Id.** (citation omitted).

¶27    We look at the totality of circumstances, not just one particular field sobriety test.  As stated above, just as many factors have supported a request for a PBT, the same factors support probable cause for arrest, including bloodshot eyes, an odor of intoxicants, speeding, admission of drinking, a prior OWI conviction, the time of day, and the officer's experience.  *See* **Kennedy**, 359 Wis. 2d 454, ¶22; **Lange**, 317 Wis. 2d 383, ¶¶28-33.

¶28    Under the totality of the circumstances, we agree with the State that in this case, the record contains more than sufficient evidence to meet the probable cause to arrest standard.  When considering all the potential signs of impairment observed by Deputy Simonsen together, a reasonable officer would believe that it was probable that Lobato was operating a motor vehicle while under the influence.

¶29  All of the factors discussed above are relevant here. Considered together, the time of night of the stop (around 2:00 a.m.), the strong odor of intoxicants, Lobato's bloodshot and glassy eyes, his high rate of speed, and exhibiting four of six clues on the HGN test support a finding a probable cause. In addition, Lobato's refusal to take a PBT is also evidence of probable cause. *See State v. Babbitt*, 188 Wis. 2d 349, 363, 525 N.W.2d 102 (Ct. App. 1994) (field sobriety tests). We conclude that these factors are sufficient to establish probable cause even if the officer, at the time of the arrest, told Lobato that he had made the decision to arrest regardless of whether Lobato consented to the PBT.

¶30  In conclusion, the totality of the circumstances support probable cause for arrest, because they would lead a reasonable officer to believe "that the defendant probably committed a crime." *Johnson v. State*, 75 Wis. 2d 344, 348, 249 N.W.2d 593 (1977) (citation omitted).

*Timely filing of Brief*

¶31  Finally, Lobato, argues that we should disregard the State's brief because it was filed a day late. WISCONSIN STAT. RULE 809.19(1) requires that the appellant's brief be filed within forty days of the filing of the record. Lobato argues that the record was filed on October 19, 2021, and the brief was filed on November 29, 2021, making it one day late. Our review of the record shows that although the clerk certified the record on October 19, 2021, our court did not receive the certification until October 20, 2021. Thus, the brief was timely filed.

14

## Conclusion

¶32 For the foregoing reasons, we hold that Simonsen had probable cause to request a PBT and to arrest Lobato. Therefore, the order of the circuit court is reversed and this case is remanded for further proceedings.

*By the Court*.—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.